JULIA A. JONES, APPELLEE, V. TOM DOOLEY, APPELLANT.

FILED NOVEMBER 17, 1921. No. 21650.

1. **Appeal in Equity:** INCOMPETENT EVIDENCE. Upon appeal in actions in equity, this court will not consider incompetent evidence received by the trial court.

2. ———: CONFLICTING EVIDENCE. Upon appeal in actions in equity, when the testimony of witnesses orally examined before the court upon the vital issues is conflicting, this court will, while trying the case *de novo*, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite.

APPEAL from the district court for Sarpy county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*William R. Patrick,* for appellant.

*H. A. Collins, contra.*

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and GOSS, District Judges.

Jones v. Dooley.

Goss, District Judge.

This is a suit in equity to cancel a life lease upon 80 acres of land in Sarpy county. From a decree for plaintiff, the defendant appeals.

Plaintiff, 60 years old, a widow for 14 years, had a life estate in the land, derived from her husband's estate. She lived in Omaha, and had never seen the land, which had no buildings on it. She had leased it during her tenure, first through a local agent, now dead, and, since 1916, through J. R. Wilson, clerk of the district court, who left some of the details to his daughter. Plaintiff allowed her agent to decide upon the tenant and the rental, and to pay the taxes, so that about all she seemed to have to do with the property was to receive her net income from it. For some years the land had been leased by Mr. Uhe, first at $250 a year, and latterly at $300 a year. The taxes were about $50 annually. Mr. Uhe held the land on a lease from March 1, 1919, to March 1, 1920, when the events occurred in the summer of 1919 which are the subject of controversy. The defendant knew that Wilson was the local representative of the plaintiff and that Miss Wilson also had to do with the land. He conceived the idea of purchasing it, and, saying nothing to the Wilsons until after his lease was provided for, he went direct to plaintiff with his proposal. He then learned from plaintiff, and later confirmed it from the records, that she had only a life estate. She says he told her that Mr. Wilson was tired of looking after the land, and that Mr. Uhe did not want the land after March 1, 1920. Upon hearing from him that she was without an agent, she says she asked time to consult with her cousin, Mr. Colvin, of South Omaha, who once had a farm adjoining her land; but she says that the defendant returned and pressed her for action before she had had time to see Mr. Colvin and get his advice. On his third trip to Omaha to see plaintiff, and after both were aware that she had only a life estate, and after he had been furnished the address of the remainderman and had

Jones v. Dooley.

hopes of purchasing the fee, it was agreed between the parties that the land would be leased to defendant. He went away, prepared the life lease, which is in evidence, returned to her home and arranged for her to execute the lease. He then went down town, engaged a notary, and returned with him to have the lease acknowledged. ;What occurred there is the subject of sharp conflict between plaintiff and defendant in the testimony. The notary read the lease to her. The notary says that he then handed it to her, and she had some discussion with defendant about the life term, and then signed. She testifies that when the life lease was read she objected to giving a lease for more than one or two years, and they said, "I will change that, and they wrote there." She thinks Mr. Dooley was the one who did the writing, and after that she signed the lease. Defendant denies any talk about changing the life term, and any pretense of writing anything in the lease; the notary did not hear defendant suggest any change in the form, although he testifies that the parties discussed the life term. The plaintiff's testimony and the general atmosphere of the entire evidence indicate that she was a deaf, nervous, inexperienced woman, probably suffering greater impairment than the usual woman of her years, and at the time considerably confounded by a recent death in her family. The defendant denies that there was any talk or pretense of modifying the written lease.

The defendant is 39 years old, for several years county clerk of Sarpy county, and evidently a man experienced in real estate matters. He denies all statements of plaintiff in her testimony calculated to show misrepresentation on his part, and claims the utmost good faith and fair dealing. He admits that if the land were built up a little it might rent for $10 or more an acre. Under the lease he was to pay $300 a year and the taxes for the 80 acres.

The statute, read literally, requires us, in a review of an appeal in equity, to retry the issues of fact and reach

an independent conclusion. Rev. St. 1913, sec. 8198. But when the testimony of witnesses orally examined before the court is conflicting, this court will, while trying the case *de novo*, consider the fact·that the trial court had the opportunity of observing the witnesses, their manner of testifying, and other circumstances in the case which tend to indicate which version of the transaction is reliable, when, from the conflict of testimony, it is impossible that both versions can be true. *Cooley v. Rafter,* 80 Neb. 181; *Langmann v. Guernsey,* 95 Neb. 221; *Occidental Building & Loan Ass'n v. Adams,* 96 Neb. 454; *McLaughlin Bros. v. Hilliard,* 97 Neb. 326; *Shafer v. Beatrice State Bank,* 99 Neb. 317; *Greiner v. Lincoln,* 101 Neb. 771; *Dworak v. Dobson,* 102 Neb. 696; *Gaunt v. Smith,* 103 Neb. 506.

We leave out of view all hearsay evidence admitted by the trial judge and complained of by appellant.

The trial judge was familiar with the surroundings, knew most of the witnesses, if not all of them, and had an opportunity to observe their manner while testifying. With these advantages he formed a decisive opinion on the conflicting evidence in this case. The case is not free from doubt; but, taking into consideration all the competent evidence and giving due weight to the finding of the trial court, we do not feel justified in coming to a different conclusion. We decide that there is no error in the decree.

The judgment is

AFFIRMED.