ANNIE W. MAGILL, APPELLEE, V. ALVA B. MAGILL ET AL.,
APPELLANTS.

FILED JUNE 8, 1926.   NO. 23708.

1. **Appeal:** TRIAL DE NOVO. When an action in equity is appealed,
   wherein review of some or all of the findings of fact of the dis-
   trict court is asked by the appellant, it is the duty of this court
   to try the issues *de novo* and reach an independent conclusion
   without reference to the findings of the district court.  Comp. St.
   1922, sec. 9150.  And when the evidence on material questions
   of fact is in irreconcilable conflict, this court will, in determining
   the weight of the evidence, consider the fact that the trial court
   observed the witnesses and their manner of testifying.
2. **Affirmance.** Upon examination of the entire record, and upon
   trial *de novo*, we find that the evidence supports the judgment.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE.   *Affirmed.*

*Nye, Worlock & Nye* for appellants.

*N. P. McDonald,* contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD,
THOMPSON and EBERLY, JJ.

DEAN, J.

Mrs. Annie W. Magill, plaintiff, is the mother of Alva B.
Magill, defendant.   Lavia B. Magill, is Alva's wife.   Alva
and Lavia Magill are the sole defendants.   This is a fore-
closure suit commenced in the district court for Buffalo
county by Mrs Annie W. Magill to recover on a certain 6
per cent. interest bearing promissory note, executed by Alva
and Lavia Magill in the principal sum of $4,630, dated
March 1, 1921, payable March 1, 1924, to plaintiff's order,
and secured by a mortgage on a quarter section of land in
Buffalo county, which is dated and acknowledged April 28,
1921, being about two months after the date of the note.
The above mortgage is subject to a prior first mortgage on
the same land in the principal sum of $9,000.   The owners
of the $9,000 mortgage, however, are not parties to this
suit.   The following instrument, dated April 28, 1921,

Magill v. Magill.

which is pleaded in paragraph 5 of defendants' second amended answer, is also in the record:

"Kearney, Nebraska, April 28, 1921.

"Received of A. B. Magill, a note made in his favor for fifty-eight hundred dollars ($5,800), secured by a mortgage on one-hundred sixty acres of land in Lincoln county, Nebraska, which I am holding as collateral to a note of A. B. Magill and wife for four-thousand six-hundred thirty dollars ($4,630), secured by a second mortgage on the northwest quarter (N. W. 1/4) of section thirty-two (32) township nine (9) north, range fourteen (14) west, in Buffalo county, Nebraska, which is to be returned to A. B. Magill when his note is paid in full.

"Anna W. Magill."

In respect of the $5,800 note and mortgage, referred to by some of the witnesses as "the western mortgage," and also referred to in the last above-described instrument, the court held:

"That the instrument set forth in paragraph 5 of defendants' second amended answer, dated April 28, 1921, and purporting to have been signed by Anna W. Magill, and purporting to state that a certain note made in favor of the defendant Alva B. Magill, for $5,800, secured by a mortgage on 160 acres of land in Lincoln county, Nebraska, was held by plaintiff as collateral security to the note and mortgage set forth in plaintiff's petition, was not signed by the plaintiff with the knowledge and understanding that said instrument was a statement that said $5,800 note and mortgage was held by her as collateral security for the note and mortgage set forth in plaintiff's petition, and the court finds that said $5,800 note and mortgage on the land in Lincoln county, Nebraska, is the absolute property of the plaintiff and is not held by the plaintiff as collateral security to the note and mortgage set forth in plaintiff's petition."

When the evidence was finally submitted, the court rendered a judgment of foreclosure and found and decreed that $5,301.50 was due plaintiff on the $4,630 note and mort-

gage sued on, with interest at the rate of 8 per cent. per annum from the date of the judgment, subject only to the prior mortgage of $9,000. The court further found and decreed that plaintiff was the owner and the holder of the title to the $5,800 note, above described, and quieted and confirmed the title thereto in the plaintiff. Defendants appealed.

The main dispute in the present case is in respect of the $5,800 note and mortgage and certain interest which had accrued thereon. Alva Magill denied that he ever, at any time, delivered the $5,800 note and mortgage to his mother other than as security for the $4,630 loan which she made to him. Defendants alleged that the "note of $4,630 represented all of the indebtedness which was owing to the plaintiff," and that plaintiff agreed to return the $5,800 note to defendant as soon as his note for $4,630 was paid; that plaintiff represented to her son, Alva, that she was being taxed on the $4,630 note, and that in order to avoid such payment of taxes defendant complied with her request to execute the mortgage sued on, upon her agreement that the $5,800 note and mortgage should be returned when he paid the $4,630 note.

Mrs. Beulah Ross is a daughter of plaintiff. She was eleven in 1901 and lived at home from thence until 1910 when Alva married. It was during the period between 1901 and 1910 that Beulah's brother, Alva, claimed that he sent large sums of money to his parents which aggregated $5,000 or $6,000. She testified that Alva worked in a brickyard two years before he was married and paid $2 a week for his board and room; that her father never borrowed any money from him, but that at one time Alva sent $90 home for her father at a time when he could do no work on account of a broken arm after they moved to town in 1902. On the cross-examination the witness testified: "Q. Now, so you think Alva didn't contribute anything to your father and mother at all during those years? A. I do not. Q. And you are just telling from what you saw yourself; you don't know anything aside, from any evidence of any-

one that has told you anything?   A. No; I am only telling
what I, know. * * * The Court:   You never heard your
mother say that Alva sent her fifty or one-hundred dollars?
A. I did not.   The Court:   Do you think if he had ad-
vanced her during that time as much as five or six-thousand
dollars, you would have known about it?   A. I certainly
would.   The Court:   You certainly would, you say?   A. I
certainly would. * * * The Court:   And they (her par-
ents) talked over their business matters in your presence
and hearing?   A. Yes, sir; they always did from the time
we were little tots, you might say, talked over their busi-
ness, you know, right openly, in the presence of us
youngsters."

. A Kearney banker testified that plaintiff and defendant
came to the bank and there made a settlement of the ac-
counts between them; that from their talk he understood
that Alva Magill was indebted to his mother in a sum ap-
proximating $10,000, and that she wanted him, the wit-
ness, to deduct the value of the $5,800 note and mortgage
from the $10,000 which Alva owed her, and make out a
note for the remainder of his indebtedness to her, includ-
ing accrued interest; that this brought the amount up to
$4,630 which is the face of the note sued on.   When asked
if there was anything said by Alva or his mother to in-
dicate that the $5,800 note was collateral to the $4,630
note, he answered:   "I didn't understand it that way;" that
Alva did not at that time or at any other time claim that
his mother owed him anything.   On the cross-examination
this banker testified:   "I couldn't say that Alva mentioned
definitely about the $5,800 any more than he consented that
the $4,630 was the difference between the value of the
$5,800 and the $10,000;" that Mrs. Annie Magill com-
plained about having to pay taxes on the $4,630 note, and
that he, the witness, suggested "that the real estate mort-
gage with the proper clause in it" would obviate the ob-
jectionable taxation feature of which Alva's mother com-
plained, and that this "led up to the making of the mort-
gage."   He further testified that Alva, in speaking of the

$5,800 note and mortgage, said "it was being assigned to her (his mother), in payment of something that he owed her."

The following stipulation appears in the record:

"It is stipulated by and between the plaintiff and the defendants that the Central National Bank has collected for Anna W. Magill interest on the $5,800 note and mortgage referred to in the evidence for three successive years, 1921, 1922, and 1923, on or about March 1st each year, in the sum of $348 each time, and that said bank has credited the account of Anna W. Magill with these amounts in said bank and that she has received the benefit of the credit."

The record shows that Alva's mother is 65 years of age. That she was unacquainted with business usage and business custom is apparent from all of her evidence. But in the main her evidence was corroborated by that of her daughter, Beulah Ross, and of the Kearney banker, both of whom were called in her behalf, and by at least one other witness. Plaintiff testified that she never borrowed any money from her son, but she added that he sent $90 home when his father broke his arm, and that this sum was all paid back to him. From her evidence it appears that Alva borrowed $10,000 from her while the parents lived on a farm and that with this he did "some building and he got a threshing machine," an irrigating pump and some live stock. She produced a check for $4,000 and one for $6,000 payable to Alva, and his indorsement appears thereon. Defendant claimed, however, that the $4,000 check was not a loan from his mother, but was in payment of money he loaned her from time to time and for which he said she gave him three promissory notes in the aggregate sum of $6,000 or about that sum. He claimed to have made a final settlement with his mother in 1920, about a year before he executed the $4,630 note in her favor. The evidence conflicts on this as on every material point at issue. True, the case was tried as one in equity, and under the law it is our duty to try the issues here *de novo*. Comp. St. 1922, sec. 9150. The rule to which we are committed follows:

When an action in equity is appealed, wherein review of some or all of the findings of fact of the district court is asked by the appellant, it is the duty of this court to try the issues *de novo* and reach an independent conclusion without reference to the findings of the district court. And when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner in testifying. *Greusel v. Payne*, 107 Neb. 84; *Johnson v. Erickson*, 110 Neb. 511. In view of the present state of the record, it seems that the discussion need not be further prolonged.

We conclude that the weight of the evidence is on the side of plaintiff. It follows that the judgment of the district court must be and it hereby is in all things

AFFIRMED.