ROSEBUD LUMBER AND COAL COMPANY, A CORPORATION, APPELLANT, V. FRANK P. HOLMS .ET AL., APPELLEES.
52 N. W. 2d 313

Filed March 7, 1952. No. 33104.

*Patrick J. Heaton* and *Harold E. Connors,* for appellant.

*Kepler & Knicely* and *Martin & Davis,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Rosebud Lumber and Coal Company, a corporation, brought this action against Frank P. Holms and Louise Holms, his wife; Roy Knight and ——— Knight, his wife, first and real name unknown; and Guarantee Mutual Life Company, a corporation, defendants, in the district court for Cheyenne County to foreclose a mechanic's lien. There was no service of process upon the defendants Knight.

At the conclusion of the plaintiff's evidence the defendants moved the court to dismiss the plaintiff's petition. The court sustained this motion and dismissed the plaintiff's petition and the cross-petition of the defendant Guarantee Mutual Life Company. From the overruling of the plaintiff's motion for new trial the plaintiff appeals.

Plaintiff's petition alleged, insofar as necessary to consider here, that plaintiff, between December 12, 1949, and March 8, 1950, sold to the defendants Knight and Frank P. Holms and Louise Holms, husband and wife, certain building materials; that said materials were sold and delivered to be used, and in fact were used, in the construction of a dwelling house on the following described premises: Lot 45, Morrow's Addition to Sidney, Cheyenne County, Nebraska; and, at the times said materials were sold, defendants Holms were, and still are, the owners in fee of the above described premises. The itemized account of the materials furnished, the charges therefor, and the amount paid are set forth. The date of the filing of the mechanic's lien and affidavit are pleaded. In addition, the petition alleges that the defendant Guarantee Mutual Life Company claims a lien on the described premises by virtue of a real estate mortgage, and if such lien is valid, it is junior and inferior to the mechanic's lien of the plaintiff. Plaintiff prayed for foreclosure of its mechanic's lien, and that it be declared to be paramount to the mortgage lien of the Guarantee Mutual Life Company.

The defendant Guarantee Mutual Life Company, by answer denied generally the allegations of the plaintiff's petition not admitted, and affirmatively alleged by cross-petition that the defendants Holms made, executed, and delivered to this defendant their promissory note and mortgage to secure the note; specifically denied the validity and existence of the mechanic's lien which plaintiff seeks to foreclose; affirmatively pleaded that its mortgage be declared a first and paramount lien on the premises of the defendants Holms; and that in the event the court should determine that the mechanic's lien of the plaintiff is paramount to this defendant's mortgage lien, then an accounting be had as to the amount owing this defendant, and the property be sold to pay the liens against it. The prayer is in accordance with the cross-petition and for equitable relief.

The defendants Holms by answer denied generally the allegations of plaintiff's petition and the allegations of the defendant Guarantee Mutual Life Company's cross-petition.

The plaintiff's reply to the answer of defendants Holms is a general denial. The plaintiff's reply to the answer and cross-petition of the Guarantee Mutual Life Company admitted its corporate capacity, that it held a mortgage lien, denied that such lien was prior to plaintiff's lien, and generally denied allegations of the answer and cross-petition not admitted.

By stipulation the record shows that Frank P. Holms and Louise Holms, husband and wife, were the owners of Lot 45, Morrow's Addition to the city of Sidney, Cheyenne County, Nebraska, on or about December 12, 1949, and are still the owners of said real estate; and that plaintiff filed an affidavit and mechanic's lien with an itemized list of materials alleged to have been furnished by it for the erection of a building on the above described lot on April 26, 1950, at 4 p. m. It also was stipulated, on April 3, 1950, the defendants Holms made, executed, and delivered to the Guarantee Mutual Life

Company their promissory note in the amount of $8,700 with interest at the rate of 4½ percent per annum on the unpaid balance until paid, and on the same date, to secure the payment of the note, defendants Holms executed and delivered to the Guarantee Mutual Life Company their mortgage deed filed of record April 12, 1950. There is due the Guarantee Mutual Life Company from defendants Holms $8,383.24.

R. H. Coe testified that he is the president of the Rosebud Lumber and Coal Company, a corporation located at Winner, South Dakota, engaged in the retail sale of lumber and coal. He had business transactions with Roy Knight who posed as a contractor and builder. Roy Knight had practically finished a motel at Winner. contemplated building a mortuary in Winner, and "The man that was there said that he had three units to build at Sidney, Nebraska."

George T. Carter testified that in December 1949, he was a construction foreman for the Roy Knight Construction Company which consisted of Roy Knight and his wife Cecelia. He built a house for Frank Holms which was located at 1145 Sixth Avenue, in Sidney. He was asked: "That is the property that is in controversy here?" He answered: "I think so; yes, sir." He acted as foreman on the job from the time the basement was excavated in November 1949, until the outside work and drives were finished in the latter part of April 1950. He ordered the materials by telephone from Roy Knight who resided in Winner. This was dimensional material. Four truckloads of such material were delivered to the Frank Holms lot, 1145 Sixth Avenue, and unloaded on the lot. This material was used in the construction of the house. Some of the materials which comprised the third load delivered were rejected by him. This consisted of knocked-down windows of the old type which would not fit. On the list he sent to Roy Knight he requested weatherstripped units. The rejected materials were reloaded on

one of Knight's trucks and sent back to Winner. After that, on the fourth load, replacements were delivered by Knight's truck. There was one unit short on this load.

Alfred C. Struss testified that he was employed as a carpenter foreman for the Roy Knight Construction Company located at Winner, South Dakota. He was foreman of the building of the motel, and delivered lumber wherever it was needed on other jobs. He delivered three loads of material which he obtained from the Rosebud Lumber and Coal Company to the Frank Holms house in Sidney. He loaded the truck himself and drove it to Sidney. The deliveries were made in January and February 1950, his last trip being in February. The dimensional lumber was segregated from the other lumber in the Rosebud lumberyard and set apart. The first load delivered by him consisted of dimensional lumber pre-cut by him on one of Roy Knight's jobs. It was loaded on the truck again after being cut, and taken to Sidney to the Frank Holms residence. He did not know the street number or the lot number of the Frank Holms residence. The cement blocks had just been laid in the basement when he delivered the first load. He unloaded this material at the east side of the basement. The second load he handled consisted of shingles, shakes, flooring, and also some sheeting. He had some help in loading this material at Winner, and it was delivered to the Frank Holms residence in Sidney. The third load which he obtained from the Rosebud lumberyard from a list of material given to him by Knight, and which he loaded from this list, was taken to the Frank Holms place in Sidney and unloaded. He was accompanied at that time by George Patterson, an employee of the Knight Construction Company. He also obtained lumber from the Rosebud Lumber and Coal Company to be used in the Mason Funeral Home and the motel located at Winner. This construction work was in progress at the same time deliveries of material were being made to the Holms residence in

Sidney. Certain materials constituting a part of the third load to Sidney were rejected by Carter, the foreman on that job, and were taken back to the Rosebud lumberyard in Winner. He did not remember whether or not he made a report to the Rosebud Lumber and Coal Company with reference to the return of this lumber. He obtained no receipt evidencing return of this lumber. George Patterson made a delivery in February when this witness was in the hospital. He entered the hospital in Winner on February 17, 1950, and was discharged therefrom on February 22, 1950. No deliveries were made to the Holms house after the delivery made by Patterson. This was the fourth load of material.

George Patterson testified that he is engaged in carpenter work and in building, and was employed by the Knight Construction Company of Winner, South Dakota. He brought one load of material to Sidney to the Frank Holms residence which was being constructed at that time. It was a split load part of which came from the Rosebud Lumber and Coal Company, that he loaded. It consisted of miscellaneous finished lumber and millwork. He helped unload this material in Sidney the last Sunday in February 1950. At that time Struss was at home in Minden. He had been released from the hospital and was not working. He saw some building lumber that was sent to Sidney by a common carrier. He did not know the name of the carrier that was employed to haul it. He believed this material consisted of a window and a door that had not arrived at the time he made his delivery to Sidney. He further testified the millwork is all kept separate from the rest of the lumber in the Rosebud lumberyard. The last load he delivered had a different order number that apprised him of the material that had been purchased by the Knight Construction Company. He also testified to the manner in which the fourth load that he delivered to

Sidney was unloaded by the foreman on the job and himself.

Alfred Struss was recalled and testified that he sent some material which he obtained from the Rosebud Lumber and Coal Company to Sidney after Patterson had delivered the fourth load of material. This consisted of a door and window, and was sent after he returned from Minden, which was either the 5th or 6th of March 1950.

R. G. Coe was recalled and testified that the employees of the Knight Construction Company picked up the lumber from the Rosebud lumberyard to be sent to Sidney; that he made an itemized list of the lumber delivered to arrive at a price on it; that exhibit No. 1 is an itemized list of these materials; that the total charge for the same is $2,858; that $800 has been credited to the account; and that $2,058 is still owing, for which the corporation has not been paid. On cross-examination he testified he furnished materials to Mr. Knight for three jobs: One, the finishing of the motel at Winner; another, the construction of a mortuary in Winner; and the third was for what was designated as project No. 1 at Sidney, Nebraska, known as the Holms house. He also testified that at the time he prepared to file his mechanic's lien he had a conversation with Knight's foreman, Carter, with reference to the materials that went into the construction of the Holms house; also, he had no knowledge of any replacements being sent to the Holms residence; that all the millwork which had been ordered was in the Rosebud lumberyard February 25, 1950; and that a small shipment was made later on.

The foreman, George T. Carter, was recalled and testified that after the fourth delivery was made by Mr. Patterson there was one other delivery made to the Holms house by common carrier, which consisted of a single window and a slab door. He was then asked to examine exhibit No. 1, the itemized statement of the

account with the Rosebud Lumber and Coal Company under dates of February 25, 1950, and March 8, 1950, and advise whether or not the window and slab door which were purportedly delivered by the common carrier in Sidney subsequent to the time Patterson delivered the last load were shown on that exhibit. He testified they were not. The material was received and used.

The plaintiff assigns as error (1) the judgment of the trial court is contrary to the evidence and the law, and (2) the trial court prejudicially erred in sustaining defendant's motion to dismiss the plaintiff's petition.

Section 52-102, R. S. 1943, provides in substance that any person or subcontractor who shall furnish any material for any of the purposes mentioned in section 52-101, to the contractor, or any subcontractor who shall desire to secure a lien upon structures mentioned in said section may file a written statement of the amount due him for material, together with a description of the land upon which the same was used, within 60 days from the furnishing of such material, with the register of deeds of the county wherein said land is situated. If the contractor does not pay such person or subcontractor for the same, such subcontractor or person shall have a lien for the amount due for such material on such lot or lots and the improvements thereon from the same time and in the same manner as the original contractor.

"The trend of all recent decisions is to hold that mechanic's lien statutes are cumulative and remedial in nature requiring a liberal construction so as to effectuate their objects and purposes and protect all claimants within their scope as well as to promote substantial justice." Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298. See, also, Way v. Cameron, 94 Neb. 708, 144 N. W. 172; White Lake Lumber Co. v. Russell, 22 Neb. 126, 34 N. W. 104, 3 Am. S. R. 262; Henry & Coatsworth Co. v. Fisherdick, 37 Neb. 207, 55

N. W. 643; Central Const. Co. v. Highsmith, *ante* p. 113, 50 N. W. 2d 817.

"In an equity suit, when the defendant moves for a dismissal of the plaintiff's action at the close of plaintiff's evidence he thereby admits plaintiff's evidence to be true, together with every inference which fairly and reasonably may be drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and plaintiff has made a prima facie case, the motion to dismiss should be overruled." Paul v. McGahan, 152 Neb. 578, 42 N. W. 2d 172.

The trial court found that the evidence was not sufficient to establish and prove a valid contract between the plaintiff, who would be the subcontractor, and the contractor Roy Knight.

In the case of Great Western Manufacturing Co. v. Hunter Bros., 15 Neb. 32, 16 N. W. 759, the court said: "From an examination of this section it must be apparent that it makes no difference what the nature or character of the contract may be, whether special, or parol, verbal, or written, express or implied. If the contract and delivery, or furnishing under it, is sufficient to create an indebtedness or liability, it is sufficient to create a lien under the provisions of this section."

The relationship between a contractor and an owner rests in the contract, express or implied, but there is no privity of contract between the subcontractor and the owner. See Frost v. Falgetter, 52 Neb. 692, 73 N. W. 12.

In Marrener v. Paxton, 17 Neb. 634, 24 N. W. 209, an action to foreclose a subcontractor's lien, the court said: "We have no doubt that in a proper case, one furnishing materials in good faith for the erection of a building under an agreement with a contractor for that purpose, may file a mechanic's lien upon the structure and the lots on which it stands. The lien is given, however, not upon the ground that a contract was made by the owner with such subcontractor, but because the material so

furnished was used in the erection of the building.
* * * Where, however, a subcontractor seeks to charge
the owner, it devolves on him to show either that the
material furnished by him was used in the erection of
the building, or at least that he delivered it there under
an agreement with the contractor that it would be used
in the erection of the building on which the lien is
sought." See, also, Way v. Cameron, *supra.*

In the light of the foregoing authorities we conclude
the trial court erred, as contended for by the plaintiff.

The plaintiff contends the trial court erred, in dis-
missing its petition, in finding that the evidence was
insufficient to show the plaintiff furnished material
that was delivered to property owned by defendants
Holms or used in the construction of a house on Holms'
property.

The affidavit of the plaintiff states that the itemized
statement of account of the materials is a true and
correct account of the materials furnished by it for
Roy Knight and Frank P. Holms on an oral contract
for materials furnished for the erection of a house on
Lot 45, Morrow's Addition to Sidney, Nebraska. The
plaintiff's petition so pleads. The parties stipulated
that Frank P. Holms and Louise Holms, his wife, were
the owners of Lot 45, Morrow's Addition to Sidney, on
December 12, 1949, and are still the owners of such
property. The defendants assert that throughout the
remainder of the record the property as above described
is never mentioned; that no witness testified that ma-
terial was ever delivered to, or used in the construc-
tion of a building on, that property; the evidence shows
only that a house was built for Frank P. Holms at 1145
Sixth Avenue. The foreman for the Knight Construction
Company testified that was the property in controversy.
The defendants Holms and defendant Guarantee Mutual
Life Company were not misled, nor does the evidence
show that they were in any manner deceived as to the
materials delivered and used in the construction of the

Holms house. The evidence shows that on one occasion the defendants Holms were present and talked to Mr. Patterson who delivered the fourth load of materials to the Holms lot, and wanted to know why Struss, who had made the previous deliveries, had not delivered this load of material.

The statute requires that in the affidavit filed to procure a subcontractor's lien there should be such a description of the real estate as, aided by extrinsic evidence suggested by the description itself, would charge a party dealing with real estate with notice of the lien claimed against it. See Drexel v. Richards, 50 Neb. 509, 70 N. W. 23. See, also, Guiou v. Ryckman, 77 Neb. 833, 110 N. W. 759, 124 Am. S. R. 877; Way v. Cameron, *supra;* Rucker v. Steelman, 73 Ind. 396; Holden v. Mensinger, 175 Cal. 300, 165 P. 950.

Under the evidence the plaintiff has established a prima facie right to enforce the mechanic's lien. The trial court erred as contended for by the plaintiff.

The plaintiff contends the trial court erred, in sustaining the defendants' motion to dismiss its petition, in finding the evidence was not sufficient to prove the fair and reasonable value of the materials furnished by the plaintiff.

The president of the plaintiff corporation testified that exhibit No. 1 was an itemized list of the materials that were sent to Sidney and the charges made thereon in the amount of $2,858, upon which account $800 had been paid and there was owing $2,058. There was no objection to the showing that the prices set forth in the list were not correct, or that the items for profit or the discounts allowed were not reasonable and fair. The evidence shows prima facie what the reasonable cost of the material was and is not controverted.

There is evidence that might disclose excessive charges or overcharges on certain items appearing in the itemized list of materials furnished.

Where the amount indicated was claimed in excess

of that actually due, an overstatement in a claim for a mechanic's lien of the amount due will not, when arising from an honest mistake or an inadvertence free from fraudulent intent, vitiate the lien for the sum actually due. Cases holding to the above rule of law are too numerous to cite. See annotation in 29 L. R. A. N. S. 306. See, also, Kneeland on Mechanic's Liens (2d ed.) § 165, p. 179; Central Const. Co. v. Highsmith, *supra.*

There is no evidence, if the itemized list of material contains an overstatement of the amount due and sought to be recovered by virtue of the mechanic's lien, that such was made intentionally and with a design to defraud. In the state of the record at this time, the defendant's contention as to an overcharge being made by the plaintiff cannot be sustained.

The plaintiff contends that the trial court erred, in dismissing its petition, in finding that the mechanic's lien filed on April 26, 1950, at 4 p. m., was not filed in time as provided for by law. While there is some conflict in the evidence, it does appear that the last delivery made by the witness Patterson, using the Knight Construction Company truck, was on February 26, 1950. There is also evidence that a window and slab door were delivered to the premises by a common carrier either the 5th or 6th of March 1950. The itemized statement of account of materials furnished by plaintiff shows the charges made therefor and the materials furnished at that time, as of March 8, 1950. These last items were not replacement items. It is apparent from this evidence that the mechanic's lien of plaintiff was filed in time as provided for by law.

Other assignments of error need not be discussed.

Being mindful of the rule heretofore set out, when defendant moves to dismiss plaintiff's case at the close of the plaintiff's evidence the defendant thereupon admits the plaintiff's testimony to be true, together with every inference which may fairly and reasonably be

drawn therefrom. We conclude, by the plaintiff's evidence and the authorities cited, the plaintiff has made a prima facie case.

Where it appears that such dismissal of the plaintiff's cause of action was erroneous, the parties are entitled to be placed in the same position they were in before the error occurred, which requires the cause to be remanded for a new trial. Paul v. McGahan, *supra.*

The judgment of the trial court in dismissing the plaintiff's petition and in dismissing the cross-petition of the defendant Guarantee Mutual Life Company, a corporation, is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.