MODERN PLUMBING & HEATING, INC., A CORPORATION, APPELLEE, V. JOURNEY WEST CAMPGROUND, INC., A CORPORATION, APPELLANT.
229 N. W. 2d 192

Filed May 15, 1975. No. 39713.

Wright & Simmons, for appellant.

Holtorf, Hansen, Kovarik & Nuttleman, for appellee.

Heard before WHITE, C. J., BOSLAUGH, and McCOWN, JJ., and LYNCH and BURKE, District Judges.

LYNCH, District Judge.

The defendant-appellant, Journey West Campground, Inc., employed plaintiff-appellee, Modern Plumbing & Heating, Inc., to furnish the material and plumbing work for the construction of a trailer campground. In its petion to foreclose a mechanic's lien, the plaintiff alleged performance of a written contract as orally modified and failure of the defendant to pay the balance due of $6,944.96. The defendant's answer denied that the agreement was modified, and alleged that the plaintiff failed

to complete the water installations contracted for, and that plaintiff did defective work for which defendant asked $27,611.88 in its counterclaim.

The trial court decided that the parties had executed a written contract which was orally modified and substantially performed by the plaintiff; that the contract price was $15,993.35, the defendant should be credited for changes and deletions of the value of $2,443.64, and the plaintiff should be allowed $116.20 for additional labor and material; that damages allowable to the defendant amounted to $837.82; that defendant had paid to plaintiff the sum of $7,465.37; and that there is due to plaintiff the sum of $5,362.72, which constitutes a lien upon the defendant's property.

The defendant contends on appeal that there was no competent proof of an oral modification of the contract and that the undisputed evidence established a failure of substantial performance by the plaintiff.

Although the transaction included installation of plumbing, fixtures, and facilities for two mobile homes, a headquarters building and the campground, the dispute pertains principally to water connections to the individual campsites, a $2,548.70 item in plaintiff's bid. The plaintiff actually positioned 25 risers to supply 50 water outlets or hookups.

Documentary evidence included the plaintiff's bid, engineer's blueprint, and a sketch drawn by Roy Reid, president of the defendant company. Reid's undated drawing apparently depicting 108 campstalls was disputed as a component of the original agreement. None of the exhibits specifies or indicates the exact number of water risers or outlets to be installed or the total of camper spaces to be provided with water.

Plaintiff's witnesses interpreted the engineer's plans as calling for about 60 camper stalls. Larry Prickett, plaintiff's supervisor, testified that when the plumbing work began on the campground the parties agreed that 28 water risers, each riser to serve 2 camper compartments,

would be placed. Reid testified that he thought the plaintiff agreed to install 108 water sites. The testimony is in substantial agreement that as the work progressed on the area Reid staked out the individual camp spaces, islands, and approximate positions of the water, sewer, and electrical systems. Prickett's testimony that Reid marked an "X" on the ground to locate each water riser was not controverted.

In its reply brief the defendant states that: "A key element of Defendant's position on this appeal is that Plaintiff admitted, by inference from its pleadings, that the original Contract between the parties called for approximately one hundred water sites." The claimed admission was contained in a subparagraph of plaintiff's answer to the defendant's counterclaim and is as follows: "Allege that specifications were provided to the plaintiff to prepare his bid on this job, however, the plaintiff was advised that the bid was to be prepared upon approximately one-half ($\frac{1}{2}$) of the camper stalls that were shown on the original specifications and therefore modifications necessarily were made in the bid to adjust to the defendant's request." The pleading continued on to allege in the same paragraph that when work began the defendant informed the plaintiff that the number of campsites was reduced and defendant placed stakes where the water connections were to be located.

The defendant argues that by this allegation in the pleadings the plaintiff admitted that the original contract called for 100 water sites; that this is a judicial admission which is final and conclusive on the plaintiff; and that the plaintiff actually installed 50 water sites and, therefore, did not substantially perform the contract.

It is stated in 30 Am. Jur. 2d, Evidence, § 1099, p. 264: "Admissions in pleadings may be overcome by evidence explaining the apparent inconsistency, such as evidence showing the pleader's ignorance of the contents of the pleading, his misunderstanding of the facts, or mistake

on his part, \* \* \*." In 31A C. J. S., Evidence, § 381, p. 920, it is stated: "Unequivocal judicial admissions are generally conclusive on the party, but not, it is sometimes held, on the court. Some cases distinguish formal judicial admissions intended to limit the issues and those which serve as ordinary evidence in the case, the former, being held conclusive, but not the latter." This court held in Vermaas v. Heckel, 170 Neb. 321, 102 N. W. 2d 647, that: "A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true."

The allegation in the plaintiff's pleading so heavily relied upon by the defendant as constituting an admission was neither unequivocal nor unexplained, and it is obvious from the record that it was not intended by the litigants nor accepted by the trial court as a substitute for evidence and as conclusive relative to the water-hookup issue. The statement was not final and binding but capable of explanation as any evidentiary admission against interest.

Section 25-1925, R. R. S. 1943, provides in substance that in appeals in suits in equity the Supreme Court shall retry the issues of fact and upon trial de novo reach an independent conclusion without reference to the conclusion reached in the District Court. In Occidental Savings & Loan Assn. v. Cannon, 184 Neb. 659, 171 N. W. 2d 166, it was stated that a mechanic's lien action is tried de novo in the Supreme Court. It was held in Jones v. Dooley, 107 Neb. 162, 185 N. W. 307, that: "Upon appeal in actions in equity, when the testimony of witnesses orally examined before the court upon the vital issues is conflicting, this court will, while trying the case de novo, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather

than the opposite." See, also, Magill v. Magill, 114 Neb. 636, 209 N. W. 241; Schuller v. Schuller, 191 Neb. 266, 214 N. W. 2d 617.

It is apparent from the record that as a result of numerous meetings and negotiations the parties never accomplished a complete unambiguous contract. The documentary evidence and the testimony are convincing that whatever the original intentions or plans may have been, they were materially modified without benefit of scrivener. The defendant's contention that plaintiff's pleadings contain a fatally conclusive admission is without merit. A review of the entire record confirms that the conflicting testimony concerning the number of water hookups contemplated preponderates in favor of the plaintiff. The findings and judgment of the District Court are affirmed.

AFFIRMED.