DAVID SENFTEN, DOING BUSINESS AS METALCRAFTERS
HEATING & AIR CONDITIONING, APPELLANT, V.
CHURCH OF THE NAZARENE OF COLUMBUS, NEBRASKA,
A CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
AND EQUITABLE SAVINGS AND LOAN ASSOCIATION OF
COLUMBUS, NEBRASKA, A CORPORATION, APPELLEES,
HELEN L. KRUSE, AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF STANLEY H. KRUSE, DECEASED, HELEN
L. KRUSE, INDIVIDUALLY, AND RONALD L. KRUSE,
THIRD-PARTY DEFENDANTS, APPELLEES.

335 N.W.2d 753

Filed June 24, 1983. No. 82-286.

Tessendorf, Milbourn, Fehringer & Bothe, P.C., for appellant.

Leininger, Grant & Rogers, for appellee Church.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.

This appeal arises from a foreclosure action involving 12 mechanics' liens claimed by as many sub-

contractors and materialmen who furnished labor or materials in the construction of the Church of the Nazarene in Columbus, Nebraska (Church). Six of the liens were released prior to trial and the causes of action representing those liens were dismissed by the lienholders or their assignee. Appellant, David Senften, doing business as Metalcrafters Heating & Air Conditioning (Senften), is the claimant of one of the mechanics' liens and the assignee of five others. Following the trial, the court found in favor of Senften on his third, sixth, and seventh causes of action and ordered a decree of foreclosure. On Senften's first, fifth, and tenth causes of action, the trial court, however, found for the Church and dismissed those causes of action. It is from the action of the trial court in dismissing the first, fifth, and tenth causes of action that this appeal is brought.

With regard to the first and fifth causes of action, the trial court found that Senften had failed to introduce sufficient evidence to prove the reasonable value of the labor performed or material provided. With regard to the tenth cause of action, the trial court found that the evidence introduced to establish the fair and reasonable value of the labor and materials was insufficient and, further, that the time for filing the lien had expired as to part of the work done prior to the date the lien was in fact filed. For reasons more particularly set out in this opinion, we reverse in part and in part affirm.

The basic evidence is not in dispute. In January of 1980 the Church accepted a proposal dated December 22, 1979, submitted by Stanley H. Kruse on behalf of Kruse Construction Company (Kruse) for the construction of a worship and classroom building in Columbus, Nebraska. In connection with the construction of the Church, Senften submitted a written proposal to Ronald L. Kruse, the son of Stanley H. Kruse, for the installation of heaters, air-conditioners, and ductwork in the building. Senften performed the work on the Church beginning on June 20, 1980,

and, except for the installation of some registers on the ductwork, completed his work on October 23, 1980. A mechanic's lien was filed by Senften on January 23, 1981.

On October 7, 1980, M & O Metals, Inc., the materialman involved in the fifth cause of action, sold four door panic devices to Kruse for use in the Church's building. M & O Metals filed a mechanic's lien on January 7, 1981.

In connection with the tenth cause of action, Joe Moore, doing business as Central Insulation & Roofing, at the request of Kruse, tarred the footings of the Church building on April 9, 1980. Then, on October 2 and October 11, Central installed insulation in the attic of the Church building, also at the request of Kruse. The bill submitted for the tarring was the sum of $74, and for the insulation, the sum of $1,470. On January 9, 1981, Moore filed a mechanic's lien in the total amount of $1,544.

A mechanic's lien foreclosure is to be considered by the Supreme Court on appeal de novo on the record, giving credit to the fact that the trial court observed the witnesses and their manner of testifying. See, *Modern Plumbing & Heating, Inc. v. Journey West Campground, Inc.*, 193 Neb. 781, 229 N.W.2d 192 (1975); *Waite Lumber Co., Inc. v. Carpenter*, 205 Neb. 860, 290 N.W.2d 655 (1980). The primary dispute common to all three causes of action is a question of law and whether a subcontractor can foreclose upon a mechanic's lien to recover the reasonable value of labor performed or material furnished by offering in evidence the contract between the subcontractor and the prime contractor. As we have indicated, the trial court held that the subcontractor could not recover on that basis. In that regard we think the trial court was in error.

We should further note, before turning to discuss the various causes of action, that the statutes involved in this appeal are Neb. Rev. Stat. §§ 52-102 and 52-103 (Reissue 1978), which were repealed ef-

fective January 1, 1982. Section 52-102 provided in part: "Any person or subcontractor who shall perform any labor for, or furnish any material, machinery, or fixtures . . . for any of the purposes mentioned in section 52-101, to the contractor, or any subcontractor who shall desire to secure a lien upon any of the structures mentioned in said section, may file a sworn statement of the amount due him from such contractor for such labor, material . . . together with a description of the land upon which the same was done or used, within four months from the performing of such labor or furnishing such material . . . with the register of deeds of the county wherein said land is situated."

Section 52-103, after first describing the manner in which the lien is to be prepared and filed, concluded as follows: "*Provided*, nothing herein contained shall be taken to prevent the ascertainment by proceeding at law, or otherwise, of the amount actually due for such labor and material, and such lien shall be for no larger sum than the amount actually due therefor."

Senften argues that he met his burden of proof as to his own lien by showing the existence of an oral contract entered into between Senften and the prime contractor, while the Church argues that evidence of a contract between the subcontractor and the prime contractor is not binding on the owner. While it is true that a contract, oral or written, between a subcontractor and a contractor is not binding upon the owner of the property, it is also true that, absent evidence to the contrary, the existence of such a contract does establish the fair and reasonable value of the services. Specifically, in the supplemental opinion in the case of *Rosebud Lumber and Coal Company v. Holms*, 155 Neb. 688, 689, 53 N.W.2d 82, 83 (1952), this court said: "[A]n owner may not be compelled to pay more than the reasonable value of labor or materials furnished, and is not bound by the agreed prices between the contractor and the lien

claimant, but such agreed prices may be taken as prima facie correct." In the *Rosebud Lumber* case the subcontractor was found to have established the reasonable cost of material furnished the contractor merely by offering in evidence an itemized list of materials furnished the contractor and the charges made upon them. In approving such action this court, in the original opinion at 155 Neb. 459, 52 N.W.2d 313, said at 470, 52 N.W.2d at 319: "There was no objection to the showing that the prices set forth in the list were not correct, or that the items for profit or the discounts allowed were not reasonable and fair. The evidence shows prima facie what the reasonable cost of the material was and is not controverted." In support of the claim Senften offered in evidence a written proposal submitted by Senften to Kruse, wherein Senften agreed to provide the entire heating and air-conditioning for the price of $8,839. No evidence was offered in the present case by the Church to show that the price agreed upon between the contractor and the subcontractor did not reflect the fair and reasonable cost of the labor and material furnished. We find it difficult to imagine what better evidence exists as to the fair and reasonable value of a job than what the prime contractor has agreed to pay, absent some evidence to show that the contract price was not legitimate.

The Church further argues that acceptance by Ronald Kruse, the son of the prime contractor, was not acceptance by the contractor, and therefore not evidence of the contract between the prime contractor and Senften. The evidence is clear that the son was acting as agent for his father and was authorized to accept the bid submitted by Senften. The proposal prepared by Senften shows on its face that it is submitted to "Kruse Const" for the "Church of the Nazarene," and specifically recites that "We Propose hereby to furnish material and labor — complete in accordance with above specifications, for the sum of: _____ dollars

($8,839.00).'' To argue that this proposal was not submitted to Kruse Construction or accepted by it for a definite sum is to attempt to ignore the facts of the matter as presented to the trial court and to deny to the subcontractor the rights accorded him under mechanic's lien laws. As we noted in *Chicago Lumber Co. v. Horner*, 210 Neb. 833, 836, 317 N.W.2d 87, 89-90 (1982): ''[M]echanic's lien statutes are cumulative and remedial in nature and require a liberal construction so as to effectuate their objects and purposes and protect all claimants within their scope as well as to promote substantial justice.'' Absent any evidence to show that Senften's agreement to provide labor and material for the sum of $8,839, which obviously was accepted by Kruse and provided to the Church, was not fair and reasonable as against the owner, the trial court should have granted the relief sought by Senften on the first cause of action.

What we have said with regard to the first cause of action is likewise applicable under the facts to the fifth cause of action. The materialman involved in the fifth cause of action was M & O Metals, owned by Alvin Fuchs. The evidence discloses that Stanley Kruse ordered three door panic devices for the front and rear doors of the Church. Exhibit 26 is a sales ticket, dated October 7, 1980, from M & O Metals for ''Kruse Const.,'' listing two devices of one type and one of another type. The amount listed for the two is $187.20, and the price for the third device is listed as $560.96. Written on the sales ticket below is the word ''Church.'' Also attached to the sales ticket is a handwritten note, which Fuchs testified was written by Stanley Kruse himself, which simply says, ''2 for the 3' door's'' ''1 for double door in front,'' and with the word ''Church'' also written on the note. Further, Fuchs testified that Kruse took with him the two devices for the rear doors and that the other item had to be ordered. Exhibit 27 is an altered copy of exhibit 26. On it, the quantity for the third

device was changed to "2," and a note, with the words, "picked up 10/8/80." Fuchs testified that a Kruse employee came into the store on October 8 to pick up the third device and said two were needed rather than one, and that these items were installed on the front door of the Church. An examination of exhibits 26 and 27, plus the testimony of Fuchs, uncontradicted by any other evidence, clearly established that four items were sold to Kruse for installation at the Church at a total agreed price of $748.16. Absent any evidence to the contrary, this evidence established a prima facie showing of reasonable value, and the trial court should have entered judgment of foreclosure for Senften and against the Church in that amount on the fifth cause of action.

The situation with regard to the tenth cause of action is different. The tenth cause of action involved labor and material provided by Joe Moore as the owner of Central Insulation & Roofing. He testified that Kruse told him to tar the footings of the Church and that he did so on April 9, 1980, charging $.10 per square foot, for a total cost of $74. There is no testimony that Moore advised Kruse in advance as to what the charge would be or that Kruse agreed to such sum. Then, in October of 1980, Kruse told Moore that the building was ready to receive the attic insulation. Moore performed those services on October 2 and October 11 of 1980. The price he charged for the insulation was calculated by multiplying the number of square feet by $.40 per square foot, for a total of $1,470. Moore again testified that there had been no discussion with Kruse in advance as to what he would charge for the insulation. Moore filed a mechanic's lien on January 9, 1981. Although the mechanic's lien filed by Moore indicated that the last day of work was November 9, 1980, Moore testified that the date had no basis in fact and that the last date was October 11, 1980. On the basis of the testimony presented by Moore, it cannot be said that Moore and Kruse had arrived at

a set contract price before the work was done. In the absence of a contract to pay a definite sum, the builder is entitled to recover only the reasonable market value for material and labor. *Patterson v. Spelts Lumber Co.*, 166 Neb. 692, 90 N.W.2d 283 (1958). Having failed to establish that there was any agreed price for the labor or materials, and further failing to introduce evidence as to the fair and reasonable value of the labor and materials, Moore failed to make a prima facie case and the trial court was correct in denying Moore's lien.

One further issue which we might comment on is a matter raised by the Church at trial. It maintained that the notice required by § 52-103 was not mailed to the Church within 5 days of the filing of the M & O Metals lien. The evidence discloses that while it was not filed within 5 days of the filing of the lien, the notice was mailed within 5 days *after* the last date for the *filing* of such lien. This was in compliance with the provisions of § 52-103, which specifically provides that a person filing a lien "shall within five days after the last day for filing of such lien" send notice of the filing to the registered owners of the property. The filing of the notice was in all respects correct.

For the reasons therefor set out in this opinion, the judgment of the trial court as to the first and fifth causes of action is reversed and remanded with directions, and judgment with regard to the tenth cause of action is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED.