KENNETH P. SHAMBURG, APPELLEE, v. KENNETH R. FOLKERS, APPELLANT.

188 N. W. 2d 723

Filed July 2, 1971.  No. 37749.

Healey, Healey, Brown & Burchard, for appellant.

Marti, O'Gara, Dalton & Bruckner, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This action grows out of a head-on motor vehicle collision which occurred during daylight hours near the crest of a hill on a graveled county road known as the Malcolm-Garland road, which runs in an east-west direction.  The plaintiff Kenneth P. Shamburg was driving a 1965 Chevrolet ¾-ton pickup east.  The defendant Kenneth R. Folkers was driving a 1967 Mercury west. There were no witnesses to the collision save the parties.  Folkers cross-petitioned for his damages.  The

jury found for Shamburg on his petition and against Folkers on his cross-petition. Judgment was rendered on the verdict. Folkers appeals.

Two questions are presented on this appeal. Folkers contends that the undisputed physical facts show that the Shamburg pickup was across the centerline of the main traveled portion of the road at the time of the collision and therefore Shamburg's right of action is barred by contributory negligence proximately causing the collision, and that the court erred in permitting over objection a lay witness, Schmieding, to testify to his conclusion that the Folkers vehicle was on the wrong side of the highway. Later in the trial the same question in almost identical language was asked and without objection the second witness gave the same answer.

We affirm the verdict and the judgment.

The evidence on the accident facts was produced by the testimony of the two parties, the investigating highway patrolman, two after the collision witnesses, photographs taken by the patrolman, and a diagram and measurements made by the investigating officer. The oral testimony of each of the parties was such that the jury could have, apart from the physical evidence, found that one or the other was, at the moment of impact and immediately prior thereto, on his own proper side of the road.

The investigating officer made measurements of the width of the road and determined that it was 28 feet wide, measured from points along the edge. He stated that all of the 28 feet except about a tire's width on each side was fit for travel. The two vehicles were impaled upon each other and remained tightly jammed together after the accident. The pickup faced to the north of east and the Mercury to the south of west. There was no marked centerline on the road.

The patrolman made the following measurements. (A) With reference to the Folkers' Mercury: (1) From the north edge of the road to the right front tire, 10 feet 11

inches. (2) From the north edge to the right rear tire, 9 feet 5 inches. (3) From the south edge to the left rear tire, 13 feet 2 inches. (4) From the south edge to the left front tire, 12 feet 3 inches. (B) With reference to the Shamburg vehicle: (1) From the south edge to the right front tire, 10 feet. (2) From the south edge to the right rear tire, 7 feet 8 inches. (3) From the north edge to the left rear tire, 15 feet. (4) From the north edge to the hubcap of the left front wheel, 14 feet. This hubcap was detached but lying against the wheel.

It was raining at the time of and just after the accident. There was no evidence of tire or skidmarks of either vehicle. There is a dispute in the testimony as to whether the full 28 feet of the road width was fit for travel.

Folkers' contention that the undisputed physical facts show that the Shamburg vehicle was over the centerline of the main traveled portion of the highway at the time of impact is founded primarily upon the measurements made by the highway patrolman. Essentially the argument is that these measurements amount to undisputed physical facts and show (if Folkers' evidence of an untravelable portion of the north side is disbelieved), that Folkers' vehicle was over the centerline. These same facts, therefore, because of the overlap in the collision of the vehicles show that the Shamburg vehicle was also over the centerline. Folkers points out the patrolman's statement was that about a tire's width on each side of the highway within the 28-foot measurement was not travelable because of the softness of the edges. Folgers argues therefore that the measurement of 14 feet to the left front wheel of the Shamburg vehicle in itself places the vehicle over the center of the highway. He argues further that the Shamburg vehicle was even more over the centerline at the time of impact because the photographs show that the left front of the Shamburg vehicle is displaced inward. He further argues that this alleged fact is verified because the 14-

foot measurement plus the 10-foot measurement and the width of the Shamburg vehicle is greater than the width of the highway and the difference is the inward displacement of the Shamburg vehicle by the impact.

We hold that the physical facts do not indisputably establish the position of the vehicles at the time of the impact. The measurements, if accepted as absolutely accurate, establish only the location of the vehicles after the impact. There was no undisputed centerline of the main traveled portion of the highway. There were no tire marks showing the paths of either vehicle immediately prior to the impact. The amount and direction of movement after impact cannot be ascertained. The measurements themselves are not undisputed physical facts. The testimony of a witness for each party challenged respectively the 7-foot 8-inch measurement with reference to the Shamburg vehicle and the 9-foot 5-inch measurement with reference to the Folkers vehicle. Neither do the 10-foot and 14-foot measurements to the front tires of the Shamburg vehicle support indisputably Folkers' contention that the Shamburg vehicle was displaced inwardly at the left front or if it was how much. Neither vehicle was aligned parallel to the direction of the highway. They were at an angle thereon. The two points of measurement were not made on the same line. The difference between the sum of the two measurements and the measured highway width therefore do not give an accurate measurement of the width of the vehicle.

Folkers cites several cases decided by this court for the "principle" that where the undisputed physical facts show a vehicle was across the centerline of the road at the time of impact that recovery by the driver of the vehicle is barred by reason of contributory negligence proximately contributing to the collision.

An examination of these cases indicates, for reasons already given, that none of them are applicable here. The measurements and the damage to the vehicles here

do not indisputably demonstrate that the plaintiff's vehicle was north of the centerline of the main traveled portion of the highway at and immediately prior to the impact. It may be observed in passing that the "principle" cited by the defendant is not a principle of law at all, but simply a fact finding by the court in cases in which it felt the verdict was clearly contrary to the evidence and that the verdict should have been directed.

The second assignment of error relates to the failure of the trial court to sustain an objection to a question propounded by the plaintiff in redirect examination of a witness, Schmieding, who arrived at the scene of the accident shortly after it occurred. In order to understand the contentions and the ruling in this connection, it is necessary to summarize what occurred immediately before and after the testimony to which objection was made. The cross-examination of this witness covered, among other things, certain photographs of the road which had been taken a few days after the accident. The witness testified that they showed the road's general appearance and condition in the area of the accident. He also on cross-examination testified that the Shamburg pickup was so close to the south edge of the road that in passing around it he took hold of the pickup to keep from slipping into the ditch. He further testified that he disagreed with the patrolman's measurement that the back end of the pickup was 7 feet 8 inches from the edge of the road. Then on redirect the following occurred: "Q. You didn't measure the distances there yourself, did you, Mr. Schmieding? A. No; I didn't have no rule with me. Q. Your testimony here is based on what you observed; is that correct? A. That's right. Q. And *from* your observations, from what you saw when you first arrived on the scene, can you tell us *which vehicle appeared* to be on the *wrong side* the road? MR. HEALEY: Objected to, calling for a conclusion of the witness. COURT: Overruled. You may answer. Q. Did you understand the question? A. Repeat it once

more, please. MR. BRUCKNER: I will have the court reporter read it back. (Question read back.) A. Well, I would say the Mercury was on the wrong side the road because—You want me to go on, or not?". (Emphasis supplied.)

On recross immediately following the above examination the witness was questioned concerning photographs of the vehicles themselves at the accident scene, and the following occurred: "Do these pictures correctly show where the vehicles were when you were there at the scene? A. Well, they do in a way; and still when you look at some of them it don't look quite like it did to me the day I seen them."

In the light of the context the question does not appear to have been directed to eliciting an opinion for the conclusion of the witness as to the position of the vehicles with reference to the centerline at the time of impact. However, it is readily apparent that the question did call for the conclusion or opinion of the witness as to the position of the vehicles with reference to the centerline after they were at rest. The question itself contained an assumption, viz, that only one of the vehicles was across the centerline of the road. The question did call for a conclusion by the witness, without detailing the reasons therefor, as to "which" car was on the wrong side of the road. The evidence would have supported a finding for the defendant's position that the plaintiff's pickup also was across the centerline at the time of impact. The position of the cars after impact with reference to the imaginary centerline was obviously very important to both parties in connection with their arguments to the jury in support of their respective contentions. The measurements made by the investigating officer were not conclusive of the exact position of the cars with reference to the imaginary centerline. The question obviously was a close one. Under these circumstances we cannot say that to permit Schmieding to give his opinion or conclusion, essentially without

foundation, that only the defendant's car was across the centerline and on the "wrong" side of the road was without prejudice. The opinion of the witness called for by the question was closely related to the ultimate issue in the case, namely, whether one or both cars were across the centerline at impact.

The general rule is that the lay witness is to describe what he has observed. Benson v. Peters, 87 Neb. 263, 126 N. W. 1003; Riggs Optical Co. v. Riggs, 132 Neb. 26, 29, 270 N. W. 667. It cannot be said that this is one of those cases where the opinion is of a kind normally formed by a person constantly and correctly and where he could not accurately and adequately with reasonable facility describe the fundamental facts on which the opinion is based. The opinion in this case was not in substance description. Frazier v. Anderson, 143 Neb. 905, 11 N. W. 2d 764. The plaintiff was not entitled to have this witness' speculative conclusion presented to the jury where measurements and photographs made by others were available and received in evidence. Rickertsen v. Carskadon, 169 Neb. 744, 750, 100 N. W. 2d 852; 32 C. J. S., Evidence, § 546(17), p. 141. We are unable to say from the record that the opinion evidence may not have influenced the verdict of the jury. Its reception would normally be considered prejudicial error. Singles v. Union P. R.R. Co., 174 Neb. 816, 119 N. W. 2d 680; Grantham v. Farmers Mutual Ins. Co., 174 Neb. 790, 119 N. W. 2d 519. However, the failure of the defendant to object to the identical question which was later put to another witness and answered in the same way constituted a waiver of the objection and he cannot now complain. Rakes v. State, 158 Neb. 55, 62 N. W. 2d 273; § 25-1141, R. R. S. 1943.

.Affirmed.