UNION INSURANCE COMPANY, APPELLEE, CROSS-APPELLEE, AND CROSS-APPELLANT, V. DANIEL BAILEY AND EARLEEN BAILEY, HUSBAND AND WIFE, APPELLEES AND CROSS-APPELLEES; TOWER FINANCIAL, INC., APPELLEE, CROSS-APPELLEE, AND CROSS-APPELLANT; VALLEY RESTORATION AND CONSTRUCTION, INC., APPELLANT.

450 N.W.2d 661

Filed January 26, 1990.   No. 88-193.

George A. Sommer for appellant.

Joy Shiffermiller, of Atkins Ferguson Zimmerman Carney, P.C., for appellee Tower Financial.

Robert G. Simmons, Jr., of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellee Union Insurance.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.
Valley Restoration and Construction, Inc. (Valley), claiming that it is entitled to $42,375.60 for repairing a house damaged by water from a broken pipe, appeals a declaratory judgment awarding Valley only $31,250 for its restoration work.

The judgment was rendered by the district court for Scotts Bluff County in a lawsuit brought by Union Insurance Company (Union).

Arrangements to repair the house were made between Union

and Valley. After Valley made the repairs, Union filed a declaratory judgment action against Valley; the owners of the house, Daniel and Earleen Bailey; and Tower Financial, Inc., now known as CFS Mortgage Corporation (Tower), as mortgage holder, to determine the amount of money owed for the restoration work and to whom it should be paid. By the time of trial, Tower had become the owner of the house involved and the Baileys had assigned their rights under a Union policy of insurance to Tower. Although Greg Tuttle was named as a defendant in the lawsuit as "Greg Tuttle d/b/a Valley Restoration," it was agreed by Union and Tuttle that he was not a party to the transaction between Union and Valley. No judgment was entered in favor of or against Tuttle, and he is not a party to any appeal or cross-appeal and will not be considered further as a party. Union's policy insured against loss due to accidental discharge or overflow of water or steam from within a plumbing, heating, or air-conditioning system or from within a household appliance.

In consideration of Tower's claims, issues were framed during pretrial conferences as to whether the Bailey house had been totally destroyed, whether it had been completely repaired, and whether Union was liable up to the $65,000 face value of its policy. Both Tower and the Baileys claimed they were entitled to attorney fees.

Following trial, the district court found that Valley, pursuant to contract, repaired the damage caused by water from a broken water pipe, that under the contract the fair and reasonable value of the repairs was $31,250, and that Union had advanced to Valley $15,000. Judgment in the sum of $16,250 was entered in favor of Valley and against Union. Valley's request for attorney fees was denied. The trial court further found that since the repairs had been completed and the cost was to be paid by Union, neither the Baileys nor Tower was damaged, but that each was entitled to attorney fees. Tower was awarded $2,000 in attorney fees and the Baileys $1,250, all to be paid by Union. Motions for a new trial were denied. Valley appealed to this court and Tower cross-appealed. Union also cross-appealed, claiming that attorney fees should not have been awarded Tower or the Baileys.

We affirm the trial court's $16,250 judgment in favor of Valley and the denial of attorney fees to Valley. We reverse the award of attorney fees to Tower and the Baileys.

The essence of the dispute before us sounds in contract. Therefore, our review of the case is guided by our holding in *Donaldson v. Farm Bureau Life Ins. Co.*, 232 Neb. 140, 144-45, 440 N.W.2d 187, 189-90 (1989):

> An action for declaratory judgment under the provisions of Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985) is sui generis, *Buhrmann v. Buhrmann*, 231 Neb. 831, 438 N.W.2d 481 (1989), and *Caeli Assoc. v. Firestone Tire & Rubber Co.*, 226 Neb. 752, 415 N.W.2d 116 (1987); whether such an action is to be treated as one at law or one in equity is to be determined by the nature of the dispute, *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987). The essence of the dispute before us sounds in contract. That being so, the action is to be treated as one at law. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988). See, also, *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982). This court treats the determination of factual issues in such a declaratory judgment action which was tried without a jury in the same manner as any other action at law; accordingly, the findings of the trial court have the effect of a verdict and will not be set aside unless clearly wrong. *Jelsma v. Scottsdale Ins. Co.*, 231 Neb. 657, 437 N.W.2d 778 (1989); *Gard v. Pelican Publishing Co.*, 230 Neb. 656, 433 N.W.2d 175 (1988); *Beatrice Nat. Bank v. Southeast Neb. Co-op*, 230 Neb. 671, 432 N.W.2d 842 (1988).

In a law action on a contract, we are also bound by a pronouncement in *Corman v. Musselman*, 232 Neb. 159, 166, 439 N.W.2d 781, 786-87 (1989):

> In reviewing the trial court's judgment in an action at law tried to the court, we do not reweigh the evidence but, instead, consider the judgment in the light most favorable to the successful party and resolve conflicts in favor of the successful party, who is entitled to the benefit of every inference which can reasonably be deduced from the

evidence.

Also, in a bench trial, the judge sitting as the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we do not reweigh the evidence on appeal. *Stiles v. Skylark Meats, Inc.*, 231 Neb. 863, 438 N.W.2d 494 (1989).

Taking the view most favorable to the successful party, the record reflects the following. The Baileys' two-story house near Mitchell, Nebraska, was a converted barn, at least 40 years old, situated on a concrete slab. Around Christmas 1984, the Baileys moved from the property and leased it to tenants until shortly before March 1986. At that time, the vacant house was listed for sale at $61,400.

It is undisputed that about March 15, 1986, a waterline running under the cement slab leaked, washing away soil under the slab and causing the slab to sink. Settling of the concrete slab caused extensive damage to the interior of the house. The first story floor sloped to the west. All carpeting in the house was damp because of water accumulation. A next door neighbor testified that in some places gaps between the walls and the floor were as much as a foot. Most, if not all, of the windows and doors were either jammed or did not work properly. The damage was discovered by the Baileys' real estate agent shortly after it occurred. The leaking pipe was repaired promptly. Daniel Bailey notified his insurance agent.

In mid-March 1986, Greg Tuttle, as president of Valley, inspected the damaged house at Union's request. About May 1, 1986, Valley submitted to Union a $53,458.90 labor, material, and overhead cost plus profit estimate to repair the house.

On May 8, 1986, Union's claim adjuster notified Bailey that Union would cover the loss and that repairs would start as soon as possible. At that time, Bailey authorized Union to select a contractor and proceed with the repairs. Valley received an advance of $15,000 from Union to begin the repairs. On May 12, 1986, Valley began restoring the Baileys' house and completed its work on July 15, 1986. Generally, Valley replaced portions of the concrete slab and footings, made sand and gravel fills under the house, replaced damaged plaster with Sheetrock, repaired doors and windows, performed other

carpentry work, painted, repaired waterlines, checked electrical wiring, texturized Sheetrock and acoustic ceilings, and did general cleaning. Although further repair of the foundation was listed on the estimate, Union's adjuster instructed Valley not to make those repairs because those defects preexisted the broken water pipe. Union's adjuster also determined that the need for any repairs to the garage predated the broken water pipe.

On September 12, 1986, a Union claim adjuster met with Tuttle. There was a dispute over the extent of the repairs. As an example, some costs of repairing defects that preexisted the water pipe's rupture were not eliminated from the estimate. Although listed on the estimate, it was not necessary to rewire the house, nor did all of the plumbing under the slab need to be redone. Tuttle said he had called Union's home office and advised Union that the amount due Valley should be reduced by $8,000 to $10,000. In a deposition, Tuttle testified the reduction was $6,000 to $7,000. Union asked for documentation of costs from Valley. Union continued to protest the cost of repairs after it received a revised bill for $44,078.58. Valley tendered a second revised bill of $42,375.60.

The trial court found that a contract existed between Union and Valley for the repairs of the Bailey house based upon necessary repairs, but not to exceed the estimate arrived at between Union and Valley, and that the fair and reasonable value of the repairs made by Valley under the contract was in the sum of $31,250.

On appeal, Valley claims the trial court erred in (1) finding that Valley was entitled only to $31,250, (2) not allowing interest on the amounts found due to Valley, (3) denying Valley attorney fees, and (4) not directing the payment of Valley's expert witness.

In regard to Valley's first assignment of error, it is important to note that Valley and Union did not arrive at a set contract price for the repair of the Bailey house. Valley only supplied a cost estimate. In the absence of a contract to pay a definite sum, the contractor is entitled to recover only the reasonable market value for material and labor. *Senften v. Church of the Nazarene*, 214 Neb. 708, 335 N.W.2d 753 (1983). It has also

been held that when a cost estimate is furnished, the contractor is entitled to the reasonable value of the services provided. *Ruzicka v. Petersen*, 213 Neb. 642, 330 N.W.2d 913 (1983).

There were conflicts in the evidence as to the cost and extent of labor and materials used in repairing the Bailey house and in the computation of profit to be paid to Valley. Our review of the record does not reflect that the trial court was clearly wrong in resolving those conflicts in favor of Union.

In awarding damages, the fact finder is not required to accept a party's evidence of damages at face value, even though that evidence is not contradicted by evidence adduced by the party against whom the judgment is to be entered. Neither is it necessary that an appellate court be able to discern the exact computations by which a verdict is reached. The amount of damages to be awarded is one solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. See *American Tel. & Tel. Corp. v. Thompson*, 193 Neb. 327, 227 N.W.2d 7 (1975). Here, the judgment awarded Valley is supported by evidence and bears a reasonable relationship to the elements of the damages proved. Valley's first assignment of error is without merit.

Our review of the record does not reflect that the trial court was clearly wrong in determining that Union and Valley entered into a construction contract to repair the Bailey house. Neither was the court clearly wrong in determining that Valley was only entitled to $31,250 under the contract.

Valley next contends that it is entitled to interest on its judgment from the date that its work was substantially completed. Prejudgment interest has never been allowed where the amount of the claim has been unliquidated. " 'When reasonable controversy exists concerning the claimant's right to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed.' " *Knox v. Cook*, 233 Neb. 387, 394, 446 N.W.2d 1, 5 (1989). There was a reasonable controversy over the amount of Valley's recovery. This is demonstrated by the fact that Valley submitted at least two bills for the repairs, each for a different amount. Valley's second assignment of error is without merit.

In its third assignment of error, Valley contends that it is entitled to attorney fees pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1988). Section 44-359 provides in relevant part:

> In all cases when the beneficiary or other person entitled thereto brings an action *upon* any type of insurance policy . . . against any company . . . doing business in this state, the court, upon rendering judgment against such company . . . shall allow the plaintiff a reasonable sum as an attorney's fee *in addition to the amount of his or her recovery*, to be taxed as part of the costs.

(Emphasis supplied.)

A beneficiary or other person entitled to bring an action *upon* an insurance policy at the time suit is commenced is a person who may collect attorney fees under § 44-359. *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co.*, 222 Neb. 13, 382 N.W.2d 2 (1986). Attorney fees may be awarded under § 44-359 in declaratory judgment actions, *Workman v. Great Plains Ins. Co., Inc.*, 189 Neb. 22, 200 N.W.2d 8 (1972), even if it is the insurer who institutes the action, *State Farm Mut. Auto. Ins. Co. v. Selders*, 189 Neb. 334, 202 N.W.2d 625 (1972).

To support its claim for attorney fees, Valley relies upon our holding in *Rieschick Drilling Co. v. American Cas. Co.*, 208 Neb. 142, 303 N.W.2d 264 (1981). In that case, an action was brought against an insurance carrier *upon* a performance bond. In the present case, the declaratory judgment action was brought to determine the amount Union owed Valley under a repair contract, not upon what Union owed under its insurance policy. Valley's third assignment of error is meritless.

In its last assignment of error, Valley asserts that it was entitled to the amount of $624 for its expert witness, instead of the fee as provided in Neb. Rev. Stat. § 33-139 (Reissue 1988). During oral argument, Valley abandoned this contention. At any rate, *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980), precludes the award of nonstatutory expert witness fees on the record presented here.

In its cross-appeal, Tower asserts that as owner of the Bailey house and as assignee of any claim the Baileys had under Union's insurance policy on the house, it is entitled to receive

from Union (1) money to compensate it for the necessary costs of repairs which it claims were not performed after the house was damaged by the ruptured water pipe or, alternatively, (2) the face value of the Union policy less the amount paid to Valley.

Tower claims that the house's postrepair deterioration was due to the failure to completely repair the damage caused by the ruptured water pipe, primarily the foundation. Although there was some evidence that the foundation should have been repaired in order to avoid the postrepair settling of the slab, there was substantial evidence that any deficiency in the foundation existed prior to the damage that occurred in March 1986 from the broken water pipe. There was also substantial evidence that the damage caused by the broken water pipe was completely repaired. A next door neighbor testified that the house appeared to be completely repaired after the water pipe had broken. A consulting engineer testified that the top of the house's foundation was below grade and that the ground on the west sloped toward the house or was relatively flat. These conditions, the engineer testified, permitted rainwater to run under the slab floor of the house. The engineer testified that surface water was a contributing factor to the postrestoration settling. He further testified that the condition of the foundation had existed for some time and that a roof drain discharged rainwater within inches of the foundation.

The Baileys' real estate agent testified that a downspout extender was missing from the west side of the house and that after torrential rains, "water was running down and going right back into the utility room." Tuttle testified that a downspout on the west side of the house went directly to the ground and due to the slope there was no way for water to leave the area. Neither the engineer nor Tuttle could state whether the March 1986 broken water pipe resulted in any damage to the foundation of the house. Simply stated, Tower failed to carry its burden of proof that water from the ruptured pipe damaged the house's foundation during the policy period, March 22, 1985, to March 22, 1986. Tower also claims that the garage doors and cracks in the floors of the utility room and garage should have been repaired. However, there was evidence that these problems also

predated the leaky water pipe.

Tower's contention that the Bailey house was destroyed and that it should be paid the difference between the face value of the insurance policy and the amount paid to Valley is without merit. There was sufficient evidence for a fact finder to determine that the Bailey house was returned to its condition prior to the water pipe rupture. There was also sufficient evidence for a fact finder to determine that there was no diminution in value related to the broken water pipe. A real estate appraiser employed by Tower testified that he viewed the Bailey house before and after Valley repaired it. He testified that before the house was repaired, it had a value of $42,500 and that after it was repaired, a value of $40,000. The appraiser attributed the difference in value to a change in the market, not to the fact that the home had been damaged and repaired.

Considering the evidence in the light most favorable to Union, and giving Union the benefit of any reasonable inference, it cannot be said that the trial court was clearly wrong in finding that the repairs to the Bailey house caused by a leaking pipe were complete and that Tower suffered no damage.

In its cross-appeal, Union claims that the trial court erred in ordering Union to pay attorney fees of $1,250 and $2,000 to the Baileys and Tower, respectively. The district court did not state under what authority the fees were awarded. The authority to award attorney fees in actions on certain insurance policies is provided by statute. *Hawkeye Casualty Co. v. Stoker*, 154 Neb. 466, 48 N.W.2d 623 (1951). Statutory authority is found in § 44-359. *State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co.*, 222 Neb. 13, 382 N.W.2d 2 (1986).

In actions brought upon certain types of insurance policies, § 44-359 requires that "the court, upon rendering judgment against such company . . . shall allow the [successful party] a reasonable sum as an attorney's fee *in addition to the amount of his or her recovery*, to be taxed as part of the costs." (Emphasis supplied.) The district court found that the Baileys and Tower suffered no damages, yet awarded them attorney fees. The statute mandates that attorney fees be granted *in addition* to the amount of the recovery. Since neither the Baileys nor Tower recovered a judgment on an insurance policy, attorney fees

should not have been awarded.

The district court's judgment of $16,250 against Union and in favor of Valley is affirmed. The awards of attorney fees to the Baileys and Tower are reversed.

AFFIRMED IN PART, AND IN PART REVERSED.