**UNITED STATES of America for the Use of YONKER CONSTRUCTION COMPANY, an Iowa Corporation, Appellee/Cross–Appellant,**

v.

**WESTERN CONTRACTING CORPORATION, a corporation, and The Aetna Casualty and Surety Company, Appellants/Cross–Appellees,**

v.

**CONCRETE INDUSTRIES d/b/a General Steel Products Co., Inc., Third Party Defendants,**

**Western Contracting, Counter Defendant.**

Nos. 89–2831, 89–2928.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1990.

Decided June 5, 1991.

Richard K. Willard, Washington, D.C., for appellee/cross-appellant.

Edward H. Tricker, Lincoln, Neb., for appellants/cross-appellees.

Before JOHN R. GIBSON, Circuit Judge, and HENLEY and ROSS, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Western Contracting Corporation and its surety, Aetna Casualty and Surety Company, appeal from a judgment in favor of Western's subcontractor, Yonker Construction Company, on Yonker's Miller Act claim. Western argues that Yonker's claims are barred because it failed to give written notice of cost overruns as required by their subcontract. Western also argues that the district court improperly awarded Yonker elements of damages not recoverable under the Miller Act, prejudgment interest, and attorneys' fees. We reverse the award of prejudgment interest but affirm the judgment of the district court in all other respects.

In 1981, the United States Bureau of Reclamation awarded Western a general contract to construct a portion of an irrigation canal near Ord, Nebraska. Pursuant to the provisions of the Miller Act, 40 U.S.C. § 270a–d (1988), Western submitted a payment bond to the Bureau for the project; Aetna was surety on the bond.

In 1985, Western decided to subcontract a portion of the canal work to Yonker. In negotiating the subcontract, Western and Yonker agreed to certain conditions. Western agreed to deliver reinforcing steel, already fabricated, sorted, and tagged in accordance with contract specifications. Western also agreed to perform excavation work and to provide Yonker certain materials, equipment, and survey information, as well as access to work sites. Yonker relied on these conditions in calculating its bid price of $1,446,662.00. During construction, Yonker experienced numerous problems. Among other things, Yonker claimed that Western did not perform excavation work on time, did not deliver resteel according to specifications, and did not deliver the resteel sorted and tagged. Yonker also claimed that Western did not provide adequate access to job sites. Yonker asserted that these problems caused delays and that when Western refused to grant time extensions, it was necessary for Yonker to accelerate its work, causing Yonker to incur additional costs.

When Western refused to pay Yonker for its additional costs, Yonker filed suit against Western and Aetna in federal court based on the Miller Act. Yonker's complaint alleged ten specific acts of Western that it complained constituted breaches of their subcontract. Before trial, Aetna stipulated and the court entered an order that any judgment entered against Western would be entered against Aetna up to $2,500,000. *United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.*, No. 87–L–341, slip op. at 1 (D.Neb. Jan. 17, 1989). A thirteen day trial followed. The court submitted the case to the jury on Yonker's claims of breach of contract (Claims 1–9), final quantities (Claim 10), fraudulent misrepresentation (Claim 11), and cost of borrowed funds (Claim 12). The jury found in favor of Yonker on its claims of breach of contract, awarding damages of $367,397.00 for excess direct labor costs and $5,396.00 for excess equipment loss. The jury also found in favor of Yonker on its claims of additional quantities and fraudulent misrepresentation and awarded $77,255.11 and $40,889.00 in damages.[1] The jury awarded Yonker $104,933.00 for its claim based on cost of borrowed funds. In addition, the jury found that Western acted in bad faith, and based on this finding the district court awarded Yonker attorneys' fees in the amount of $255,384.75. *United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.*,

---

1. Western has not appealed the jury's verdict for additional quantities or fraudulent misrepresentation.

CV87–L–341, slip op. at 2 (D.Neb. June 14, 1989). Finally, the district court awarded Yonker prejudgment interest in the amount of $173,993.49. *United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.*, CV87–L–341 (D.Neb. June 14, 1989). Western appeals the jury verdict and awards of prejudgment interest and attorneys' fees on several grounds, which we address, in turn, below.

## I.

■ Western first argues that Yonker's claims are barred by its failure to provide written notice of increased costs within 20 days. The subcontract did not expressly require Yonker to provide a 20–day notice of increased costs. The subcontract did, however, contain a conduit clause, which provided that Yonker owed the same duties to Western as Western owed to the Bureau of Reclamation under the general contract.[2] The general contract required Western to provide 20 days' written notice to the Bureau of increased costs incurred as a result of any change in the work ordered by the Bureau.[3] On this basis, Western claims that the subcontract incorporated by reference the 20–day notice provision contained in the general contract, and therefore, Yonker was obligated to provide written notice to Western within 20 days of incurring any additional costs.

Western does not argue that Yonker's alleged failure to provide written notice bars Yonker's claims as a matter of law. Instead, it argues that the court erred in refusing to instruct the jury that Yonker had a duty to provide written notice to Western of its increased costs, and for this reason, the judgment should be reversed and the case remanded for a new trial.

We cannot conclude that the district court abused its discretion in refusing to give Western's instruction regarding notice. "We have often held that when the district court fairly and accurately instructs on the applicable law, a party is not entitled to specific language that it may desire." *Carlson Equip. Co. v. International Harvester Co.*, 710 F.2d 481, 483 (8th Cir.1983). Here, the district court instructed the jury that "the performance of certain obligations by one party could not occur until the other party first performed closely related obligations. In such circumstances, the party whose performance was dependent upon the earlier performance of the other party was not required to perform until the earlier performance had been done."

The general contract and subcontract were before the jury. There was testimony that the general contract required 20 days' written notice of all change orders and that the conduit clause in the subcontract imposed on Yonker the same obligations as the general contract imposed on Western. We believe that the court's instruction fairly instructed the jury on the applicable law.

Moreover, we are not convinced that the general contract changes clause even applied in these circumstances. The general contract changes clause applies only to "changes" ordered by the Bureau. Even if Yonker assumed the duty to provide written notice to Western, the evidence at trial established that Yonker based its claims on Western's breach of conditions of their subcontract, not on any *"change"* in the work.

---

2. The subcontract provided that Yonker agrees:
   [T]o be bound to the Contractor by terms of the General Contract, to conform to and comply with all of the terms of the General Contract and to assume toward the Contractor all the duties and obligations that the Contractor assumes in the General Contract toward the Owner insofar as they are applicable to this Sub–Contract unless changed in this Sub–Contract.

3. The general contract provided:
   If any change [ordered by the Contracting officer] causes an increase or decrease in the

Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any order, an equitable adjustment shall be made and the contract modified in writing accordingly: *Provided, however,* That except for claims based on defective specifications, no claim for any change ... shall be allowed for any costs incurred more than 20 days before the Contractor gives written notice as therein required....

. . . .

In any event, substantial evidence at trial showed that Western received actual notice of Yonker's increased costs. Ray Moninger, Yonker's project engineer, testified that he provided daily logs on a regular basis to Western detailing the extra charges incurred for the time spent correcting problems caused by Western. Specifically, Mr. Moninger testified that he provided the logs to Western "at least once monthly and sometimes daily." In addition, Mr. Siegel, a supervisor for Yonker, testified that he had daily discussions with Tom Everist, Rick Everist, and later Neil Everist,[4] about the problems Yonker was experiencing with Western and the related cost overruns. Indeed, Mr. Bagley, a representative of Western, testified that he received and reviewed Yonker's daily logs and understood that Yonker was incurring back charges. For the foregoing reasons, we are satisfied that the court did not abuse its discretion in refusing to give Western's requested jury instruction on notice.

## II.

Western next complains that the district court improperly awarded Yonker damages under the Miller Act. Damages under the Miller Act are limited to claims for "labor or material." 40 U.S.C. § 270b(a). Western complains that the damage instruction for the breach of contract claims permitted the jury to award Yonker worker's compensation and general liability insurance premiums, small tools and equipment depreciation, profits and home office overhead, and that none of these items is recoverable under the Miller Act. *See United States ex rel. Cobb–Strecker–Dunphy & Zimmerman, Inc. v. M.A. Mortenson, Co.*, 894 F.2d 311, 312 (8th Cir.1990) (Worker's compensation and comprehensive general liability insurance premiums are not components of "labor" compensable under the Miller Act). Western also argues that the cost of borrowed funds is not recoverable under the Miller Act. *See Bill Curphy Co. v. Elliott*, 207 F.2d 103, 109 (5th Cir.1953)

(claim for money loaned was not recoverable under the Miller Act).

Yonker challenges Western's claims, arguing that the elements of damage Western complains about are recoverable under the Miller Act, and also that the court did not submit the case to the jury solely on the basis of the Miller Act, but that it also submitted the case on the basis of pendant state law breach of contract claims that allow recovery for such items. *See, e.g., Nebraska Public Power Dist. v. Austin Power, Inc.*, 773 F.2d 960, 973 (8th Cir. 1985) (cost of borrowed funds is recoverable as damages under Nebraska law).

■ We need not decide whether the elements of damage Western complains about are recoverable under the Miller Act or whether Yonker may recover those items pursuant to state law. Aetna stipulated that *"any* judgment entered against Western would be entered against [it]." *United States ex rel. Yonker Constr. Co. v. Western Contracting Corp.*, No. 87–L–341, slip op. at 1 (D.Neb. Jan. 17, 1989) (emphasis added). Moreover, all of the components of damage of which Western complains, except for the cost of borrowed funds, were introduced in evidence without objection. Thus, whether the elements of damage are recoverable under the Miller Act or under state law is of no consequence.

■ With respect to Yonker's recovery on claims 1–9, the verdict does not establish that the jury included in its damage calculation any material amounts that were not recoverable under the Miller Act. Indeed, Western concedes that "much of the [award] on Claims 1 through 9 was presumably for labor and materials." Western argues that because the jury returned a lump sum verdict that included elements other than direct labor, a new trial should be ordered. The court instructed the jury that in calculating damages, Yonker could be awarded: "... the costs for direct labor—that is the labor cost for employees paid by the hour on the project—above those costs for direct labor contemplated

---

**4.** Tom Everist was the project manager for Western on the Mirdan Canal project, Rick Everist was the concrete superintendent on the project, and Neil Everist is a part-owner of Western.

by the contract, plus those costs incurred as a result of direct labor and a reasonable profit." Western presented evidence that its total damages were $910,339, and of that amount, $332,513 [5] represented excess direct labor costs. Western all but concedes that Yonker may recover $332,513 under the Miller Act. The jury returned a verdict of $367,397 for excess direct labor costs.[6] In light of the stipulation, evidence introduced at trial, and the jury verdict, we cannot conclude that the district court erred in refusing to grant a new trial.

### III.

Next, Western contends that the district court erred in awarding prejudgment interest. The district court found that "[P]rejudgment interest is necessary to compensate the plaintiff fully for its losses. There has been considerable wrongdoing on the part of the defendant.... To refuse to allow prejudgment interest would be unfair and inequitable an would result in a lack of full compensation to the plaintiff." *United States ex rel. Yonker Constr. Co.*, Memorandum and Order on Application for Prejudgment Interest, p. 4. We, however, approach the prejudgment interest issue differently and conclude that the district court erred in allowing Yonker prejudgment interest.

In *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), the Supreme Court addressed remedies available to plaintiffs under the Miller Act. In refusing to apply California law to plaintiff's claim for attorneys' fees, the Court stated: "The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." *Id.* at 127, 94 S.Ct. at 2164. Even

though *F.D. Rich* dealt with attorneys' fees, we believe that the notion of a federal remedy can readily be applied to the issue of prejudgment interest. We therefore look first to federal law in our analysis of the district court's prejudgment interest award.

In *United States ex rel. Georgia Electric Supply Co. v. United States Fidelity & Guaranty Co.*, 656 F.2d 993, 997 (5th Cir. Unit B 1981), the Fifth Circuit was faced with the identical question as in the instant case:

> Since prejudgment interest falls within the 'scope of the remedy' available to a Miller Act claimant, it appears that under the authority of *F.D. Rich*, its allowance must be initially determined as a matter of federal law. Such a determination, however, merely leads us back to state law. Neither the Miller Act nor any other applicable federal law provides standards for the allowance of prejudgment interest. It therefore seems appropriate to look to state law 'as a matter of convenience and practicality.'

*Georgia Elec., supra*, 656 F.2d at 997 (quoting in part, *Louisiana & Ark. Ry. Co. v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir.1966)). The *Georgia Electric* court went on to apply Georgia law and found that the jury did not err in awarding prejudgment interest. We agree with the Fifth Circuit's approach. Several other circuits have ruled similarly. *See United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1541–42 (10th Cir.1987) (looked to federal law and then to New Mexico law to deny prejudgment interest); *United States ex rel. Seminole Sheet Metal Co. v. SCI, Inc.*, 828 F.2d 671, 677–78 (11th Cir. 1987) (looked to federal law and then to Florida law to allow prejudgment interest);

---

5. Mr. Moninger testified that $324,597 of this amount included only hourly wages paid—not "payroll taxes and insurance, or anything like that" and that the balance consisted of Labor Purchased Forms.

6. The jury also awarded Yonker $5,396 for excess equipment loss. Yonker reached this figure by multiplying the rate for equipment that was in the original estimate by the additional

hours spent correcting problems caused by Western. We note that this damage may not be recoverable under the Miller Act unless the items were furnished for and substantially consumed on the project. *See, e.g., United States ex rel. Chemetron Corp. v. Fuller Co.*, 250 F.Supp. 649 (D.Mont.1965). Western, however, does not raise this issue on appeal.

*United States ex rel. DeBlasio Constr., Inc. v. Mountain States Constr. Co.,* 588 F.2d 259, 263–264 (9th Cir.1978) (looked to Washington law to allow prejudgment interest); *United States ex rel. Confederate Constr. Co. v. United States Fidelity & Guar. Co.,* 644 F.2d 747, 748–49 (8th Cir. 1981) (used federal law which incorporated Nebraska law on the subject of proper interest rate and the time interest begins to accrue). *See also* Annotation, *Award of Prejudgment Interest Under Miller Act (40 USCS §§ 270a et seq.),* 66 A.L.R.Fed. 901 (1990).

■■■ In the present case, the appropriate reference is to Nebraska law, as the contract was executed and the construction project was located in that state. We find additional support for this conclusion in that Yonker, as discussed in Part II above, argued that its claims were based not only on the Miller Act, but also on the basis of pendent state law breach of contract claims. In Nebraska, prejudgment interest may only be awarded when a claim is liquidated. *Union Ins. Co. v. Bailey,* 234 Neb. 257, 263, 450 N.W.2d 661, 666 (1990). According to Nebraska law, a claim is liquidated if there is no reasonable controversy as to either the right to recover or the amount of recovery. *Id.* In the instant case, a reasonable controversy existed as to Yonker's right to recover and the amount of any potential recovery. Also, Yonker does not even argue that its claims were liquidated. Therefore, we hold that Yonker's claims were unliquidated and the district court erred in awarding prejudgment interest.

## IV.

Finally, Western complains that the district court erred in awarding Yonker attorneys' fees.

The Supreme Court has instructed that attorneys' fees are generally not recoverable in Miller Act cases. *F.D. Rich, Inc.,* 417 U.S. at 129–31, 94 S.Ct. at 2165–66. The Court reached this result by concluding that no compelling reason existed to create a Miller Act exception to the general American rule, which denies an award of attorneys' fees to the prevailing party. *Id.* The Court has determined, however, that attorneys' fees may be recovered in Miller Act cases, consistent with the American rule, when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 129, 94 S.Ct. at 2165. In this case, the district court awarded attorneys' fees based on a jury finding that Western acted in bad faith. The district court asked the jury to determine whether Western violated its "duty to act without bad faith in the performance of the subcontract and in the initiation of its counterclaim." [7] The court defined "bad faith" as "an action or actions done knowingly and with no reasonable basis."

■■ Western first argues that the award of attorneys' fees should be set aside because the district court applied an incorrect standard for awarding fees. Western urges that more than "knowing and unreasonable conduct" is required for a finding of bad faith. Western claims that bad faith does not constitute egregious conduct, and that egregious conduct must exist to justify an award of attorneys' fees under the American rule. We are satisfied that "knowing and unreasonable conduct" constitutes "bad faith" for purposes of justifying an award of attorneys' fees under the American rule. *See F.D. Rich,* 417 U.S. at 129, 94 S.Ct. at 2165.

■■ Second, Western contends that the district court erred in defining bad faith. Specifically, Western contends that the grounds cited in the bad faith instruction do not constitute "bad faith" under the American rule. Western claims that a party's prelitigation conduct generally cannot form the basis for an award of attorneys' fees absent a breach of fiduciary duty. This argument is meritless. Bad faith may occur during either contract performance or litigation. *Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1543 (11th Cir. 1985).

---

7. Western filed a counterclaim alleging that Yonker breached certain provisions of their sub- contract. The counterclaim was submitted to the jury, which found in favor of Yonker.

Finally, Western argues that the evidence does not support a finding of bad faith in the performance of the contract. We have reviewed the record and are satisfied that ample evidence existed to support the jury's finding of bad faith.[8]

We reverse the district court's award of prejudgment interest but affirm the judgment of the district court in all other respects. We remand the case to the district court for proceedings consistent with this opinion.

See also 307 N.W.2d 45.

---

**8.** Western moved for judgment notwithstanding the verdict on this issue, arguing that bad faith is not a jury question. Before the district court ruled on this motion, Yonker moved for an alternative finding of bad faith by the district court should the district court rule that bad faith is not a jury question. The court denied Western's motion for judgment notwithstanding the verdict and did not decide Yonker's alternative motion because Yonker did not file the motion within 10 days of judgment as required by Fed.R.Civ.P. 52(b). Yonker appeals from this ruling. Because we have affirmed the jury's finding of bad faith, we need not consider Yonker's cross-appeal.