JULIE A. McDONALD, APPELLEE, V. CHERYL MILLER, APPELLANT.
518 N.W.2d 80

Filed June 10, 1994.   No. S-92-1015.

Alan L. Plessman for appellant.

Gordon R. Hauptman and Matthew A. Lathrop, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WRIGHT, J.

Julie A. McDonald sued Cheryl Miller for injuries sustained by McDonald in a boating accident on July 4, 1989. A jury awarded McDonald $73,000, and Miller appeals. We affirm.

## SCOPE OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not by judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994).

A jury verdict will not be disturbed on appeal unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of

passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Sanwick v. Jenson*, 244 Neb. 607, 508 N.W.2d 267 (1993).

## FACTS

On October 18, 1991, McDonald commenced an action against Miller in which McDonald sought damages for injuries she suffered as the result of a July 4, 1989, boating accident. McDonald was a passenger in a boat (Marquardt boat) which was struck by a boat operated by Miller. McDonald alleged that Miller failed to maintain a proper lookout; failed to yield the right-of-way; failed to maintain reasonable control of the boat; and failed to turn aside, swerve, or otherwise avoid striking the boat which was carrying McDonald. She claimed serious and permanent injuries as a result of the accident.

Before trial, the parties stipulated that Miller was operating a boat on Thomas Lake on July 4, 1989; that McDonald was in another boat at that time; and that a collision occurred. They stipulated that the hospital and medical expenses were fair and reasonable for the services provided.

The Marquardt boat was driven by Irvin Vrana. Dan Marquardt was water-skiing behind the boat, which was owned by his father. As the boat passed through a channel, Marquardt fell. Vrana throttled back and dragged the ski rope around to Marquardt. During this time, Vrana noticed the Miller boat approaching and decided not to proceed until it had passed.

Miller testified that as she navigated about the lake, she was originally traveling at approximately 30 m.p.h. and that the boat was level to the water. When the water became choppy, she slowed the boat to approximately 15 m.p.h., which, according to Miller, raised the front of the boat and limited her vision. She continued around the lake in this manner while visiting with passengers in the boat.

Vrana testified that while the Marquardt boat was stationary, the Miller boat drew closer and closer. The bow of the Miller boat was raised in the air, and Vrana could not see the driver of the boat. As the Miller boat approached, Vrana became concerned, stood up, and began shouting, but he failed

to attract Miller's attention. He then moved toward the front of the boat, stood on the seats in the bow, and began yelling and waving.

Bradley Pfeiffer was on the beach and heard Vrana yelling. Pfeiffer testified that the Marquardt boat was stopped, that the women in the boat driven by Miller were talking back and forth, and that the driver of the Miller boat was facing sideways, as if talking to someone next to her.

Miller testified that she became aware of the Marquardt boat when she was approximately 20 feet away and that she heard a man yelling at approximately the same time. McDonald testified that prior to the collision, she was facing the back of the boat and talking with Marquardt, who was in the water. After Vrana indicated the Miller boat was approaching, McDonald turned to look as Vrana began waving his hands. Next, according to McDonald, "it hit." McDonald testified that the Miller boat slid up on her back, pushed her head and face down into the Marquardt boat, and "clamped" her head down on the boat.

Pfeiffer testified that as the boats collided, half of the Miller boat went up onto the Marquardt boat, slid across the top of the Marquardt boat, and then slid back down into the water. Pfeiffer, an emergency medical technician, swam to the Marquardt boat, applied a stabilizing hold to McDonald's neck, and immobilized McDonald's back until a rescue squad arrived. The rescue squad placed McDonald on a backboard and applied a "C-collar."

McDonald testified that the day after the accident, she had a black eye and swelling over her other eye and her cheekbones. She had stiffness and soreness in her shoulders and back, had a severe headache, and had red marks on her back. Her recovery progressed slowly, and at the end of July, she consulted John Hannam, an Omaha neurologist.

Hannam took a thorough history of McDonald's symptoms and complaints. He was informed by McDonald that she was in a good state of health prior to the boating accident. Hannam was told by McDonald that another boat rode up over the top of the boat in which she was riding and struck her in the back of the head, that the force of the collision caused her to fall

forward, and that she struck her face against the boat in which she was riding. She complained of severe headaches and pain upon passive flexion of her neck. Based upon his examination, Hannam diagnosed McDonald's condition as posttraumatic headaches. Hannam continued to treat McDonald, and in August 1990, he prescribed physical therapy for McDonald's neck pain because patients with soft-tissue injuries develop muscle spasms.

McDonald again sought medical assistance in August 1992 because of intense pain in her shoulders and neck. After undergoing physical therapy, she visited Hannam in late August, and her condition had improved. Hannam concluded that McDonald suffered from chronic cervical strain, and he testified with a reasonable degree of medical certainty that the cervical strain was permanent and was caused by the accident of July 4, 1989.

John Dobler, McDonald's physical therapist, described the pain McDonald experienced in the back of her neck. Based upon his examination, he testified to a degree of certainty within his profession that sitting and looking down "would tend to aggravate a condition that Julie has." In his opinion, McDonald's physical therapy treatments were medically necessary.

In January 1992, McDonald consulted Thomas Huerter, an orthodontist, complaining of pain in both joints of her jaw and headaches. Upon examination, Huerter noted that McDonald was experiencing pain in both of her temporomandibular joints and had referred neck pain and tightness and that he could feel "popping" in both joint areas. He diagnosed her condition as temporomandibular joint dysfunction syndrome (TMJ).

## ANALYSIS

Miller assigns 11 errors. The first five assignments of error concern the court's overruling of objections to testimony by Duane Arp, a conservation officer with the Nebraska Game and Parks Commission. After interviewing Miller, Arp concluded that "she was probably going too slow at the time which would bring the bow of the boat up blocking her vision." Over Miller's objection as to foundation, Arp was allowed to

state his opinion that the driver of a boat has to adjust to bring down the bow of the boat when it is raised up out of the water. Miller contends that there was no foundation laid to establish Arp had any expertise in operating motorboats or knew the responsibilities of the operator of a motorboat and that a lay witness may testify only to facts perceived by his senses and may not give opinions or state conclusions. See *Shamburg v. Folkers*, 187 Neb. 169, 188 N.W.2d 723 (1971).

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not by judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissiblity of evidence. *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994). Miller claims that Arp's testimony imposed upon her a duty to keep the bow of the boat down to control the boat when there was no apparent basis for Arp to know that such duty existed and that allowing Arp's conclusion or opinion into evidence without any foundation was error which requires a new trial on all issues.

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Neb. Rev. Stat. § 27-103(1) (Reissue 1989). As a general rule, to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992).

We find that even if there was insufficient foundation for Arp's opinion regarding a duty to keep the bow down to control the boat, the testimony was not prejudicial to Miller. There was sufficient evidence in the record from which a jury could find that the Miller boat struck the Marquardt boat, which was not moving, and from which a jury could properly find that the cause of McDonald's injuries was Miller's failure to maintain a proper lookout and to maintain proper control of the boat regardless of whether the bow of the boat was in the air.

Miller testified that when she first saw the Marquardt boat, she was operating her boat at approximately 30 m.p.h. and the

boat was level in the water. As she came around a curve, the water became choppy, and she slowed down to 15 m.p.h. That speed caused the front end of the boat to rise in the air. Miller said that when the front end of the boat tilts up, she sits on her knees to see over the steering wheel. She explained that a boat is level in the water if it is operating at the proper speed and that if the boat is traveling too slowly, the back of the boat sits deeper in the water, raising the front end of the boat, which is not as heavy.

Miller argues that the court erroneously permitted Arp to state that the Miller boat "came up and over the top" of the Marquardt boat, because there was a dispute as to whether the Miller boat went up onto the Marquardt boat. Previously, Arp stated that he had determined through his investigation that the bottom of the Miller boat struck the upper left-hand side of the Marquardt boat. No objection was made to this statement. Pfeiffer also testified without objection that the Miller boat hit the Marquardt boat, went halfway up onto it, and then slid across the top and back down. Sue Sandberg, a passenger in Miller's boat, stated that the Miller boat slid up onto the Marquardt boat and slid back down after the collision and that the bow of the Miller boat was high in the air prior to the collision. Testimony objected to which is substantially similar to evidence admitted without objection results in no prejudicial error. *Greenwood Ranch v. Morrill Cty. Bd. of Equal.*, 232 Neb. 114, 439 N.W.2d 760 (1989). We find this assignment of error to be without merit.

Miller claims the court erroneously permitted Arp to testify that the Marquardt boat was stationary at the time of the collision. This assignment of error has no merit. Arp testified previously without objection that Miller told him the Marquardt boat was stationary at the time of the collision. Pfeiffer also testified that the Marquardt boat was stationary. Sandberg stated that at the time of the collision, the Marquardt boat was sitting still. The testimony to which Miller objects is substantially similar to evidence which was admitted without objection, and no prejudicial error occurred. See *id*.

Miller next argues that the court erred in overruling her objections to Pfeiffer's testimony that McDonald told him the

Miller boat hit her in the head. McDonald's attorney asked Pfeiffer what McDonald said when he first arrived to help her. We find no error in the admission of the statement by Pfeiffer because the statement was an exception to hearsay under Neb. Rev. Stat. § 27-803(1) (Reissue 1989) as an excited utterance. In addition, the testimony was substantially similar to evidence admitted without objection. See *Greenwood Ranch, supra*. McDonald testified that she turned to jump out of the Marquardt boat or to get away from the Miller boat, but it hit her in the back, slid up on her back, and pushed her head and face down into the boat so that she was clamped down. She testified that her face, neck, shoulders, and the back of her head all hurt immediately after the accident. The court limited the admission of this testimony, even though the limitation was not necessary.

Miller next asserts that it was error for the court to allow Huerter to testify as to the "high and low" of the future cost of treatment for McDonald's condition, because the testimony called for speculation and lacked foundation. Huerter, who had treated McDonald from 1983 to 1987, stated that she returned for treatment on January 29, 1992, reporting headaches, difficulty in chewing, pain in her temporomandibular joints, and referred pain in her neck. McDonald told Huerter that she had been involved in a boating accident in which a boat had come up over the top of the boat in which she was riding and compressed her head and part of her jaw into the railing of the boat. Huerter diagnosed McDonald as having TMJ and testified that it was his opinion, with reasonable medical certainty, that the TMJ was the result of trauma from the accident because the pain began soon after the accident.

Huerter testified that McDonald would need treatment for 12 to 18 months and that if the treatment did not provide relief, surgical intervention could be required. Miller objected to the following question asked of Huerter: "Do you have an opinion as to, say, the high and the low of what the treatment might cost Julie McDonald in the future for this condition?" Huerter stated that the minimum cost based upon the current course of treatment would be $1,200 and that the maximum cost if McDonald needed further tests and diagnosis or fixed

appliances would be $4,000.

The admissibility of expert testimony depends on whether specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. It is for the trial court to make the initial decision on whether the testimony will assist the trier of fact. The soundness of its determination depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 497 N.W.2d 657 (1993). The testimony was properly admitted. McDonald's future medical expenses were a fact in issue. Huerter taught orthodontics at Creighton University dental school for 4 years. He treated McDonald for 4 years prior to the accident and was familiar with the condition of her teeth prior to the accident. Huerter regularly dealt with TMJ and other types of joint dysfunctions of the jaw. Based upon the foundation presented, the testimony was properly admitted and was not the result of conjecture. The evidence was sufficiently definite to provide a basis for future medical expenses.

Miller next claims the court erred by allowing Dobler, a physical therapist, to give his opinion that McDonald would aggravate her injuries if she sat for an extended period of time. Miller's objections were based on foundation, relevancy, and speculation. She also argued that Dobler was not a proper expert to give such an opinion. We find that the testimony was relevant, proper foundation was given, the testimony was not speculative, and Dobler was a proper expert to give an opinion.

Dobler held a bachelor of science degree in physical therapy and had been a physical therapist for 17 years. He was the director of physical therapy at Midwest Sports and Industrial Rehabilitation (Midwest Rehabilitation) and had treated more than 100 patients with chronic cervical strain.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to . . . determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Neb. Rev. Stat. § 27-702 (Reissue 1989). A trial court's ruling in receiving or excluding an expert's testimony

which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Lantis v. City of Omaha*, 237 Neb. 670, 467 N.W.2d 649 (1991). The trial court did not abuse its discretion in permitting Dobler's testimony.

Miller's next argument is that Dobler was not qualified to testify as to the medical necessity of McDonald's physical therapy. This testimony was similar to the testimony of Hannam. Hannam prescribed the physical therapy and testified that the physical therapy with Midwest Rehabilitation was necessary for McDonald's treatment and care. The admission of the testimony resulted in no prejudicial error. See *Greenwood Ranch v. Morrill Cty. Bd. of Equal.*, 232 Neb. 114, 439 N.W.2d 760 (1989).

Miller next claims that the trial court erred in admitting exhibits 7A through 7K and in instructing the jury on damages based upon admission of these items because no medical provider stated that the charges for the medical services to McDonald were necessary *as a result of the accident*. Exhibit 7A, a summary of medical expenses, was not admitted in evidence. Exhibits 7B through 7K, which are medical bills, were stipulated as being fair and reasonable.

Miller correctly points out that although litigants may stipulate that a plaintiff's medical expenses are fair and reasonable costs or charges, in order to recover the stipulated expenses as damages in a negligence action, the plaintiff must prove that the defendant's conduct was the proximate cause of the medical expenses. See *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992).

In *Renne*, although the parties had stipulated that certain itemized medical expenses were fair and reasonable, there was no evidence that the accident was the proximate cause of the expenses offered in the exhibit. We stated that the stipulated list of expenses was merely a collection of names and numbers without reference to any particular time and, as such, lacked probative value and was irrelevant information which was properly excluded from the jury's consideration.

Therefore, we review the record to determine whether there is sufficient evidence to support the admission of the medical bills. The ultimate determination of whether McDonald's

medical expenses were proximately caused by the injuries she sustained in the boating accident is for the jury.

Exhibit 7B, a $900 bill from Huerter for splint therapy, was properly admitted. Huerter testified that the treatment was medically necessary and that the TMJ was caused by the boating accident.

Exhibit 7C, a statement from Ashland Emergency Service for transportation on July 4, 1989, and exhibit 7D, a statement for emergency room and x-ray services, were properly admitted based on records which show that McDonald was taken by ambulance to the emergency room immediately following the accident.

Exhibit 7E is a bill from Bergan Mercy Medical Center for $205.90. Exhibit 7G is a statement from Midwest Rehabilitation for physical therapy in the amount of $1,036. Exhibit 7I is a statement from Hannam for $766. Exhibit 7J is a $150 statement from Radiology Consultants, P.C., for an MRI (magnetic resonance imaging). Hannam testified that these expenses were medically necessary as part of McDonald's treatment for cervical strain caused by the boating accident. Exhibits 7E, 7G, 7I, and 7J were properly admitted.

Exhibit 7F is a statement for $292 from Immanuel Medical Center for physical therapy treatment in August 1992. The dates of the treatment correspond to an office visit with Hannam, who prescribed the physical therapy. Hannam was continuing to treat McDonald for cervical strain which was caused by the July 1989 boating accident. The evidence was sufficient to establish that the medical expenses described in exhibit 7F were a proximate result of the accident caused by Miller.

Exhibit 7H is a bill for $35 from Physicians Clinic, P.C., for an office visit on July 6, 1989. The record shows that Miller's attorney conceded there was proper foundation for this exhibit.

Exhibit 7K sets forth prescriptions written for McDonald following the boating accident. Two of the prescriptions, amounting to $13.58, lacked adequate foundation. However, Miller has not shown she was prejudiced by the inclusion of these two prescriptions in exhibit 7K or by the admission of exhibit 7K into evidence.

In order to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded. *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). Miller has failed to establish that she was unfairly prejudiced by the receipt into evidence of the medical bills.

There was approximately $4,000 in medical bills which were submitted to the jury for its consideration. The verdict of the jury was general and was in the amount of $73,000. " 'The amount of damages to be awarded is one solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved.' " *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 443, 500 N.W.2d 529, 542 (1993). Accord *Union Ins. Co. v. Bailey*, 234 Neb. 257, 450 N.W.2d 661 (1990). We find that Miller's assignment of error with regard to the admission of exhibits 7B through 7K is without merit.

Miller objected to jury instruction No. 3 on damages. There was sufficient evidence to warrant the giving of the instruction on the value of medical care to date or in the future. In an appeal based on a claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Macholan v. Wynegar*, 245 Neb. 374, 513 N.W.2d 309 (1994); *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994). Miller has not met that burden.

Miller's final assignment of error is the trial court's overruling of her motion for new trial. This error was not argued, and it will not be considered. To be considered by an appellate court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *Florist Supply of Omaha v. Prochaska*, 244 Neb. 776, 509 N.W.2d 209 (1993).

A jury verdict will not be disturbed on appeal unless it is clearly against the weight and reasonableness of the evidence and is so disproportionate as to indicate that it was the result of

passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded evidence or rules of law. *Sanwick v. Jenson*, 244 Neb. 607, 508 N.W.2d 267 (1993).

None of Miller's assignments of error have merit. The evidence shows that McDonald was injured as a result of Miller's negligent operation of the boat which struck McDonald. The damages awarded by the jury were for injuries resulting from the boating accident. We affirm the judgment of the district court.

AFFIRMED.

BOSLAUGH, J., participating on briefs.